CITY OF YOUNGSTOWN, APPELLEE, *v.* CITIES SERVICE OIL Co., APPELLANT.

CITY OF YOUNGSTOWN, APPELLANT, *v.* CITIES SERVICE OIL Co., APPELLEE.

(Decided June 28, 1940.)

*Mr. John A. Willo,* director of law, and *Mr. I. Freeman,* for city of Youngstown.

*Messrs. Cull & Fuller* and *Messrs. Manchester, Ford, Bennett & Powers,* for Cities Service Oil Company.

NICHOLS, P. J. The city of Youngstown, herein called "city," brought its action in the Common Pleas Court of Mahoning county for damages against Cities Service Oil Company, herein called "company." The action grew out of a fire attended by a series of explosions on the company's premises in Youngstown, whereon the company operated a bulk storage plant in connection with its business of selling and distributing gasoline.

In its fifth amended petition, the city set forth what are denominated first, second and third causes of action, all grounded upon the following propositions: First, that the company had created on its premises a hidden danger of which it knew and the firemen of the city did not know and had not reasonable opportunity of ascertaining, and of which the company failed to apprise or warn the firemen in time to avoid the damages resulting to the city; and, second, that the company had violated the provisions of certain ordinances

of the city in full force and effect on and prior to November 9, 1929, the date of the fire and explosions.

It may be that the facts upon which the city's action was based constitute but one cause of action resulting in damages of three kinds: First, loss of wages paid to the injured firemen pursuant to an ordinance theretofore adopted and then in force; second, damages to the fire-fighting equipment or apparatus of the city; and third, medical and hospital expenses paid out to and for the injured firemen pursuant to a separate ordinance of the city adopted after the fire. Since the action proceeded throughout as though these three kinds of damages gave rise to three separate causes of action, this court refers to them in the same manner.

The answer of the company is a general denial and also a claim of negligence on the part of the city in certain respects. Negligence of the city was denied in its reply.

At the conclusion of all the evidence admitted upon the trial, each party moved for a directed verdict and judgment in its favor, whereupon the trial court properly discharged the jury and took the motions under consideration. In due course, the trial court entered its judgment for the company on the first and third causes of action, and for the city in the amount of $6,780 on its second cause of action, being the value, as found by the trial court, of the city's fire apparatus damaged or destroyed by the fire and explosions. From the respective judgments entered against the parties, each appeals to this court on questions of law.

The fifth amended petition of the city sets forth the provisions of city ordinance No. 33105, regulating the use, handling, storage and sale of inflammable liquids and products thereof, and alleges the violation by the company of numerous sections of this ordinance, including subsection a, Section 16, Chapter 2, requiring a permit to be obtained for the storage of gasoline; Section 52, prohibiting the storage of gasoline in tanks

above the ground within the fire limits of the city; Section 54, requiring that each tank above ground of over 1,000 gallons capacity, containing gasoline, be provided with an approved steam or other fire retardant equipment maintained always immediately available, this section further providing:

"All manholes, handholes, vent openings and other openings, which may contain inflammable vapor, must be provided with 20 x 20 mesh brass wire screen, so attached as to completely cover the opening and be protected against clogging. A suitable safety valve must be provided, or manhole covers must be kept closed only by weight and not firmly attached. *The screen on such opening may be made removable, but must be kept normally firmly attached.*"

For emphasis, we have italicized the foregoing portion of Section 54 of the city ordinance.

The fifth amended petition of the city further alleged violation of Section 55 of the ordinance, which provides:

"Above-ground tanks, inside or outside buildings, shall have painted conspicuously upon their side the words 'Inflammable—keep fire away.' "

The fifth amended petition also sets forth the provisions of Section 72 of the ordinance, which section requires inflammable liquids to be drawn by pumps so constructed as to prevent leakage or splashing.

The fifth amended petition also alleged the violation by the company of Section 126 of the revised ordinances of the city, which requires that all electrical wiring done within the city shall be in accordance with the rules and regulations of the National Board of Fire Underwriters, known as the "National Electric Code."

The above violations by the company are all that are referred to in the briefs of the parties.

The trial court found that the first cause of action wherein the city claims damages in the sum of $6,285.17, by reason of the fact that the city paid salaries of fire-

men and fire officers who were injured in the fire during the time they were unable to perform their duties, was not well taken and has no foundation in law, being, as stated by the trial court, *dammum absque injuria,* even though the ordinance of the city required it to pay injured firemen and fire officers their salaries during the period they were disabled from injuries received in the course of their employment. In this the trial court did not err. The evidence clearly discloses that the city did not procure the services of other firemen or fire officers during the period the injured firemen and fire officers were disabled by reason of this fire; hence the city paid no more for salaries than it would have paid if these men had not been injured. The trial court suggested that the right of the city may have been different had the city been compelled to hire other firemen and officers to take the place of those injured by the fire. While the services of the injured firemen were lost to the city during the period they were disabled by the fire, there evidently were no services for them to perform and hence no injury resulted to the city.

The trial court found against the city on its claim for $4,464.15 paid by it for medical and surgical care and hospitalization, including nurse hire, for the firemen and officers injured in the fire and resultant explosion, the basis of the trial court's judgment on this cause of action being that the ordinances under which this sum was paid, although authorized by an existing provision of the charter of the city, were not in fact adopted until long after the fire—the charter provision not being self-executing. The reasoning of the trial court was correct and there is no error in this respect.

In finding for the city upon its claim for damages to its fire equipment and apparatus, the trial court points out that the rule relating to the duty of the company toward licensees on its premises has no application, for the reason that none of the equipment or apparatus of

the city was on the premises of the company at the time of the explosion and hence the allegations of the fifth amended petition and the proof on the trial relating to a hidden danger had, in the trial court's opinion, no application. In this we do not concur, it being our conclusion that the trial court gave an erroneous construction to the facts shown by the record in this case.

This court is of the opinion that the evidence received upon the trial was properly admitted for the purpose of showing all the facts and circumstances surrounding the company's premises, including its storage tanks, apparatus and equipment, the knowledge upon the part of the company's employees of any hidden danger upon the company's premises, and the lack of knowledge thereof upon the part of the city, all for the purpose of determining whether at the time of the fire and explosion a hidden danger existed on the company's premises of which it had knowledge and the firemen did not.

The trial court found that the ordinance No. 33105 was in full force and effect prior to the explosion, and that there was a flagrant noncompliance with the ordinance in two respects: First, in not placing signs on the company's tanks "to warn those lawfully and rightfully upon the premises"; and, second, in not "placing wire screens on the manholes of the large tank that was the first to explode."

We do not apprehend that the fire officers and firemen were unaware of the fact that the company's premises and tanks were being used by it for the purpose of storing gasoline in connection with the company's business, or that the fire officers and firemen would have acted differently upon the occasion of the fire if such warning signs had been on the tanks of the company, and it is the opinion of this court under the evidence adduced that reasonable minds could not have found that the failure of the company to place such warning signs on its tanks was a proximate cause

of the damages to the fire equipment and apparatus of the city. Apparently the purpose of such signs would be to discourage persons from bringing fire upon the premises. As we see it, the only significance to be given to the fact that no such signs were on the tanks is in connection with the claim of the city that a hidden danger existed upon the company's premises at the time the firemen responded to the alarm, and whether such signs were required by the ordinance or not, evidence would be admissible to show that no signs were upon the tanks indicating that they contained an inflammable substance.

The trial court apparently found that the ordinance pleaded by the city was adopted for the benefit of adjoining property owners, and further found that the city having placed its fire apparatus and equipment on property adjoining that of the company, the city was, therefore, within the class for whose benefit the ordinance was adopted. This court agrees that the ordinance was adopted for the benefit of adjoining property owners. This seems to be apparent from the reading of Section 1 of the ordinance, which is as follows:

"This ordinance shall be a remedial measure and shall, except as otherwise specified, apply to existing plants, stores, equipments, installations, etc., *which constitute a distinct hazard to adjoining property,* in so far as the intent of the sections can be reasonably fulfilled." (Italics ours.)

This court cannot agree, however, with the conclusions of the trial court that the city's fire-fighting equipment and apparatus was upon adjoining premises or that such equipment and apparatus became adjoining property within the contemplation of the ordinance when placed by the firemen partly upon the company's premises and partly upon a right of way adjacent thereto, and of which right of way the evidence indicates the company had the right to use for access to and from its plant and premises. It seemed

to be the thought of the trial court that this right of way was only for the use of an adjoining property owner, but it seems clear to this court that the company, by consent at least of its lessor, had the full right and privilege of enjoyment for ingress and egress purposes in connection with its business and without which right its leasehold would have been useless to it for the conduct of its business. At any rate, it is not conceivable by this court that the city placed itself in the position of an adjoining property owner in the contemplation of the ordinance when it brought its fire-fighting apparatus and equipment to the scene of the fire which had theretofore started on the company's premises.

Since it is our conclusion that the ordinance set up in plaintiff's fifth amended petition was adopted for the benefit of adjoining property owners and that the city's fire-fighting apparatus and equipment brought to the scene of the fire after it had started was not adjoining property within the contemplation of the ordinance, it likewise follows that the failure of the company to install the screens upon the manholes in its tanks was not a basis of liability to the city except upon its theory of hidden danger set forth in the petition.

We agree with the trial court that the evidence reveals there was no attempt upon the part of the company to comply with the ordinance of the city, and it seems equally clear that there was an omission of duty upon the part of the city to enforce the provisions of the ordinance, the failure upon the part of each being due, perhaps, to the fact that the storage plant had been installed before the property upon which it was located was taken into the corporate limits of the city and only a few months had intervened between the fire and the taking of this property within the corporate limits. There seems little doubt that one who violates the provisions of a city ordinance to the damage of another for whose benefit the ordinance was

adopted is answerable for such damages in the absence of conduct contributing thereto by the person damaged, but we find no language in the provisions of this ordinance from which a liability to the city may be inferred under the circumstances shown by the record, and we adhere to the proposition that the rule applicable in this case is that of the duty of the company to licensees upon its premises as laid down by this court in the recent case of *James* v. *Cities Service Oil Co., ante,* 87, decided November 10, 1939, motion to certify having been subsequently overruled by the Supreme Court. In the *James case* the facts were quite similar, that action growing out of the same fire and explosion and having been instituted by one of the firemen injured while on the premises in the performance of his duties, the distinction being, however, that in the former case the action was by the injured fireman and in the present proceeding the action is on behalf of the city for damages to its fire-fighting equipment taken to the scene of the fire by the city's fire officers and firemen.

This court has found little difficulty in arriving at its decision to reverse the judgment of the trial court, but the real question which has given the court much concern is whether there is any liability under the facts alleged in the fifth amended petition and shown by the record. The city's fire-fighting apparatus and equipment being inanimate objects could not have been placed upon the company's premises at the time of the fire except by the intervention of some human agency. Notice of hidden danger could not, of course, be given to these inanimate objects, nor could such inanimate objects, strictly speaking, occupy the relation of licensees upon the premises of the company. We arrive at the conclusion, however, that the fire officers and firemen who entered upon the company's premises in response to the fire were the agents and servants of the city; that the city in contemplation of law is the licensee who entered upon the company's premises

pursuant to lawful authority by its agents and servants; that the same duty is owing by the company to the city as such licensee as is owing by the company to the firemen as licensees; that the doctrine of hidden danger applies to the city for the protection of its fire-fighting apparatus and equipment in like respect as to the firemen; and that the real question presented by the pleadings and record in this case is whether the company, at the time of the fire, had created and maintained on its premises a hidden danger, of which it knew and of which the city by its fire officers and firemen had no knowledge, and of which hidden danger the company failed to warn the fire officers and firemen in time to prevent injury and damage to the city's apparatus and equipment. This issue not having been determined by the trial court, we have concluded that the judgment of the trial court should be reversed and the cause remanded for further proceedings according to law upon the so-called second cause of action in plaintiff's fifth amended petition; and that the judgment of the trial court in favor of the company and against the city upon the first and third causes of action set up in plaintiff's fifth amended petition should be, and the same is, affirmed.

*Judgment accordingly.*

CARTER and PHILLIPS, JJ., concur.