[L. A. No. 2048.  Department One.—July 1, 1908.]

## U. S. OIL AND LAND COMPANY, Respondent, v. KATE M. BELL et al., Appellants.

ATTORNEY AND CLIENT—GOOD FAITH IN TRANSACTIONS BETWEEN.—In all dealings with his client the highest degree of fairness and good faith is required of an attorney, and the courts view all such transactions with suspicion and examine them with the utmost scrutiny, and if they present even a suggestion of unfair dealing, the burden of proof is on the attorney to show the honesty and good faith of the transaction and that it was entered into by his client freely and voluntarily. Tested by this rule, it is held that the evidence was sufficient to warrant the trial court in concluding that the honesty and good faith of the transaction involved herein had been shown, and that it had been entered into by the defendants freely and voluntarily.

HOMESTEAD—LANDS HELD BY TENANCY IN COMMON.—In this state, land held by tenancy in common or joint tenancy cannot be selected or claimed as a homestead.

EVIDENCE—QUESTIONS ALREADY ANSWERED.—The refusal to permit a. witness to answer questions, the subject-matter of which had been. covered by her previous testimony, is not error.

ID.—EXCEPTION MUST BE TAKEN TO EXCLUSION OF EVIDENCE—APPEAL.. —The ruling of the trial court in excluding testimony of a witness cannot be reviewed on appeal where no exception to the ruling was: reserved.

ID.—STRIKING OUT EVIDENCE—GROUNDS FOR STATED IN CONJUNCTIVE.— Where a motion is made to strike out evidence on several grounds. stated in the conjunctive, it is not the law that the motion must. be denied unless all the objections are well founded.

APPEAL from an order of the Superior Court of Santa Barbara County refusing a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, for Appellants.

Richards & Carrier, and James L. Crittenden, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendants from an order denying their motion for a new trial.

On June 12, 1897, defendant Kate M. Bell was the owner of a tract of land in Santa Barbara County containing about. ten thousand acres, under a deed from her husband, defendant John S. Bell, which had not been recorded. On that day she and her husband, by deed of conveyance, which was duly recorded June 18, 1897, granted, sold, and conveyed to James. L. Crittenden and Sidney M. Van Wyck, Jr., an undivided one half thereof. This deed also purported to convey an undivided one half of another tract containing some four thousand acres, in which concededly defendants had no interest, and which is in no way here involved. Thereafter, on October 30, 1897, Mrs. Bell made and acknowledged her declaration of homestead as to a portion of said ten-thousand-acre tract, containing seventy-five acres, more or less, and such declaration was duly recorded November 1, 1897. On March 7, 1899, said Van Wyck conveyed his interest under the deed aforesaid to James L. Crittenden, and on September 18, 1902,. said Crittenden and his wife conveyed said undivided one half of said ten-thousand-acre tract to plaintiff. This action

was brought by plaintiff on October 31, 1902, to obtain a. decree adjudging that defendants have no interest in any part. of said ten-thousand-acre tract other than that Mrs. Bell has·· an undivided one half interest therein as tenant in common with plaintiff, that plaintiff is the owner in fee of an undivided one half as tenant in common with Mrs. Bell, and that the declaration of homestead is null and void. On July 14,. 1903, the defendants answered, and on the same day Mrs. Bell filed a cross-complaint, the object of which was to obtain a. judgment declaring the deed of June 12, 1897, rescinded and annulled on the ground that there was not any adequate or· sufficient consideration therefor, and that the same was executed and procured by and through undue influence of the grantees, by an unfair advantage of Mrs. Bell's weakness of· mind, taken by the grantees, and by an oppressive and unfair· advantage of her necessities and distress taken by said grantees. Plaintiff answered the cross-complaint. The find-·. ings of the trial court were full and complete in favor of plaintiff upon the question of the validity of the deed of June 12, 1897. It was found that the deed was made "for a valuable, adequate and sufficient consideration," that they "did. freely and voluntarily make, execute and deliver" the same, "that there was no concealment or misstatement or misrepresentation whatever or of any kind upon the part of said Jarrett T. Richards in any of his transactions . . . in the· matter of the said deed," that said deed "was not made, executed or delivered under or by reason of or as the result of· any undue influence or of any oppressive or unfair advantage· taken of the mental distress or financial embarrassment or· necessitous condition of the defendants or either of them by said James L. Crittenden, or by said Sidney M. Van Wyck, Jr.,. or by said Jarrett T. Richards or by Charles F. Carrier or· by any one on behalf of them or either of them," "that neither of said defendants was ever or at any time subject to any undue influence exercised by any of said parties, but that said defendants with full knowledge and notice of all the facts. acted freely and voluntarily."

If these findings have sufficient support in the evidence, they dispose of the case, and render immaterial other findings in favor of plaintiff upon other matters urged in support of the judgment.

Examination of the record discloses ample support for these findings. The trial court found in accord with the great weight of evidence that in May and June, 1897, and for some time prior and subsequent thereto, the ten-thousand-acre tract was of the value of not exceeding one hundred thousand dollars. It was and for several years had been almost hopelessly involved in litigation, claims being asserted against it to the extent of about one hundred and ten thousand dollars by the executors of the estate of Thomas Bell and the San Francisco Savings Union. The Bell estate claims, aggregating some fifty thousand dollars, had been pending in the courts for several years, being involved in the action of *Bell* v. *Staacke,* 141 Cal. 186, which was commenced in 1893. The property was in the hands of a receiver, and was yielding no income to defendants. The attorneys for the defendants herein apparently felt that there was practically no hope for success in that case, and that the claims against the property would absorb it all. Under these circumstances it was suggested by Mr. Richards, one of such attorneys, that another attorney might be found who might be able to carry the case to a successful issue. Mr. James L. Crittenden, then of the firm of Crittenden & Van Wyck, was spoken of in this connection, and Mr. Richards went to San Francisco in May, 1897, to consult with him, armed with a power of attorney executed by Mr. and Mrs. Bell, authorizing him to employ an attorney or attorneys and to grant as a contingent fee to the person so employed any interest in the subject of the suit and the real property affected thereby as to him might seem best. Mr. Crittenden finally agreed with Mr. Richards that his firm would take the case for one half of the property, Mr. and Mrs. Bell to pay all costs and expenses. He expressed a desire to have Mr. Richards remain in the case to act with his partner, Mr. Carrier, as local attorneys, and said that he would allow him one third of his fee therefor. He also insisted that an absolute conveyance of the undivided half of the property should be made at once. On May 22, 1897, Richards wrote to Mr. Bell at Santa Barbara, stating that Mr. Crittenden would agree "to fight the thing through for half what can be recovered," and that he had voluntarily agreed to give Richards one third of his half, but that two hundred and fifty dollars must be advanced by the Bells for personal expenses and costs of Mr.

Crittenden in attending the trial. Mrs. Bell read this letter
on its receipt. On May 25th Mr. Richards received a telegram
from Mr. Bell, of which Mrs. Bell had knowledge, directing
him to "close arrangement," and informing him the money
was ready. Thereupon the contract of employment was exe-
cuted by Mr. Richards for Mr. and Mrs. Bell, and by Messrs.
Crittenden and Van Wyck, the Bells agreeing therein to forth-
with execute and deliver a good and sufficient deed of convey-
ance of an undivided half of said property. On his return
to Santa Barbara from San Francisco, Mr. Richards gave a
copy of the agreement to Mr. Bell. Mrs. Bell testified that she
never saw the agreement until long after, but there never was
any claim on her part that she did not fully understand and
intend that Messrs. Crittenden and Van Wyck were to have
half of the property for their fee, and that Mr. Richards was
interested with Messrs. Crittenden and Van Wyck to the ex-
tent already stated. Her claim was that she did not understand
that the conveyance was to be made prior to the termination
of the litigation, or that the attorneys were to receive one half
of the rents and profits of the land received by her pending
the litigation, which, of course, would necessarily be the case
if they received a deed at once. As we have seen, however,
at this time the property was in the hands of a receiver, and
there was apparently no likelihood of her ever receiving any
of the rents and profits. Early in June, 1897, Mr. Crittenden
went to Santa Barbara to engage in the trial of the action.
He insisted that the deed should at once be made in accord
with the agreement, and Mr. Richards, on the evening of June
11th, left the deed at the Bells' house for examination by her,
Mr. Bell having already seen it and being entirely satisfied.
On the morning of June 12th he called at the house and saw
Mrs. Bell. She undoubtedly for some reason was strongly
averse to executing it, and had been worrying a great deal over
the matter during the night. The trial court was fully war-
ranted by the evidence in concluding that her only objection
was to thus absolutely putting the property in the control of
parties who were strangers, before they had rendered the
services they had undertaken to perform. He was further
fully warranted in concluding that in the interview between
her and Mr. Richards the latter was not guilty of the slightest
bad faith, or of any misrepresentation or undue influence

whatever, but that he honestly and fully explained the situation to her, and that Mrs. Bell, while deploring the circumstances that made it necessary, executed the deed freely and voluntarily and with full understanding of the situation. Considering the value and situation of the property, there was nothing unreasonable or unfair in the amount of compensation demanded, or in requiring a deed to be made at that time. Up to this time neither Mr. Crittenden nor Mr. Van Wyck had ever seen Mrs. Bell or personally communicated with her. The deed was duly delivered, and Mr. Crittenden proceeded with the performance of the service he had agreed to render. There was never any intimation to him that the arrangement that had been made was not entirely satisfactory to Mrs. Bell, nor has there ever been any complaint that the services of the attorney were not in every respect satisfactory. With the consent of Mrs. Bell, Mr. Van Wyck retired from the case, and Mr. Crittenden continued his services in the litigation in which this land was involved until the end of the year 1903, relying upon his deed, as he had a right to rely, in view of the acceptance of his services by Mrs. Bell and her failure in any way to claim the invalidity of such deed. While he was not ultimately successful in releasing the land from the claims asserted against it, he was successful in prolonging the litigation to such an extent that when those claims could no longer be resisted, the land, as the record indicates, had become much more valuable on account of the discovery of petroleum therein, an advantage accruing not only to him as the owner of an undivided half, but also to his client as the owner of the other half.

We cannot understand how, in the face of substantial evidence of this character, it could be conceived that this court would hold the findings of the trial court to be without sufficient support. It may be assumed that the rule as to transactions betwen a client and his attorney is fully as rigorous as is claimed by counsel for appellant—that in all dealings with his client the highest degree of fairness and good faith is required of the attorney, and the courts view all such transactions with suspicion and examine them with the utmost scrutiny, and if they present even a suggestion of unfair dealing, the burden of proof is on the attorney to show the honesty and good faith of the transaction and that it was

entered into by his client freely and voluntarily. The trial court was amply warranted in concluding that the honesty and good faith of the transaction had been shown, and that it had been entered into by the Bells freely and voluntarily.

There is nothing in the evidence requiring a conclusion that Mr. Crittenden was estopped to urge the invalidity of the homestead declaration. The deed from the Bells to Messrs. Crittenden and Van Wyck being valid, the land was thenceforth held by the Bells and their grantees by tenancy in common, and it is settled in this state that, under the law as it has existed for many years, land held by tenancy in common or joint tenancy cannot be selected or claimed as a homestead. (See *Schoonover* v. *Birnbaum*, 148 Cal. 548, [83 Pac. 999], and cases there cited.)

Certain errors of law in the admission and rejection of testimony are urged.

Objections were sustained to certain questions asked Mrs. Bell,—such as, "What were your feelings after you had read the deed over that night, and your condition during the night," "What was your mental condition that night," "Did you sleep that night after you read over that deed," "Had you slept any the night previous,"—all referring to the night prior to the execution of the deed on June 12, 1897. But the witness had already testified that she was very much incensed at the provisions of the deed, and the result was that she walked the floor the whole night and neither undressed nor went to bed, and subsequently testified that she was half insane when Mr. Richards waited for her signature to the deed, and that the matter had kept her awake all that night. This sufficiently covered the subject-matter of such questions.

The record fails to show any exception to the ruling of the trial court in sustaining an objection to the question asked Mrs. Bell as to any change in her financial condition between the time of executing the deed and the filing of her cross-complaint, and this ruling therefore is not open to review.

We are unable to perceive the materiality of the question asked Mrs. Bell, as to whether Messrs. Richards & Carrier had brought actions against her and recovered judgments against her *since June* 12, 1897.

Certain questions asked Mr. Richards on his cross-examination by plaintiff's counsel and objected to by defendants, were,

we think, within the scope of a proper cross-examination. Besides, the matter elicited thereby was unimportant, and could not have prejudiced defendants.

Other questions asked Mr. Richards on cross-examination by plaintiff's counsel were not strictly within the scope of proper cross-examination. Admittedly, plaintiff's counsel would have been entitled to ask these questions, except for the claim that some of them were open to the objection of being leading, if he had been examining the witness as his own on direct examination. He did subsequently make the witness his own as to all these matters, with full opportunity to opposing counsel to cross-examine. So far as the objection that some of these questions were leading is concerned, it is apparent from the answers given by the witness that the form of the questions in no degree affected the answers.

The court did not err in striking out, on the ground that it was not responsive to the question, testimony given by Mr. Bell to the effect that Mrs. Bell "was in a terrible state and had not gone to bed all night." The question was, "State as nearly as possible what Mr. Richards said when he came to your house that morning." Learned counsel is in error in his claim that where a motion is made to strike out evidence on several grounds stated in the conjunctive, the motion must be denied unless all the objections are well based.

The order denying a new trial is affirmed.

Sloss, J., and Shaw, J., concurred.