[Sac. No. 2938. In Bank.—August 8, 1919.]

## In the Matter of the Estate of EDWARD JAMES CARRAGHAR, Deceased.

[1] HOMESTEAD — TENANCY IN COMMON — JOINT TENANCY.—A homestead cannot be created or set apart from property owned by the husband or wife and a third party, as tenants in common or joint tenants.

[2] ID.—HOMESTEAD ACT OF 1868 — ABROGATION UPON ADOPTION OF CODES.—The act relating to homesteads adopted by the legislature in the year 1868 (Stats. 1867–68, p. 116), which substantially provided that whenever a party entitled to a homestead under the laws of the state is in exclusive occupation of any particular tract of land, having the same inclosed, and shall select and record and reside upon the same as a homestead, he shall be entitled to the same to the extent of his interest in the property, "although such land be held in joint tenancy, or tenancy in common, or such claimant own only an undivided interest," was abrogated by the adoption of the codes on January 1, 1873.

APPEAL from an order of the Superior Court of Sacramento County denying a petition for a probate homestead. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. Platnauer for Appellant.

Aram & Carraghar for Respondents.

ANGELLOTTI, C. J.—This is an appeal by the surviving wife of deceased from an order denying her petition for a probate homestead out of the only real property owned by the deceased at the time of his death, which was an undivided half of a lot in the city of Sacramento, and was his separate property. The other undivided one-half of said lot was owned by one Buckman. In the year 1898 deceased constructed a dwelling-house on this land. From the year 1899 to the death of deceased in 1917, the premises were occupied by deceased and his wife as their residence, and during all said time deceased had said premises inclosed, and, with his wife, was in exclusive occupation thereof. The learned judge of the lower court concluded that in view of the decisions of this court, a homestead could not be set apart from this property so owned by the deceased as a tenant in common with another person, and therefore denied the application.

[1] Whatever we might think if the question were a new one in this state, it is clear that the general rule to the effect that a homestead cannot be created or set apart from property owned by the husband or wife and a third party as tenants in common or joint tenants is too thoroughly established by a long line of decisions, commencing with *Wolf* v. *Fleischacker,* 5 Cal. 244, [63 Am. Dec. 121], and running down practically to this time, to permit us now to hold otherwise. Most of these decisions were discussed in the comparatively recent case of *Schoonover* v. *Birnbaum,* 148 Cal. 548, [83 Pac. 999], (decided in January, 1906), in which it was sought to have the prior decisions on the question overruled, and where we felt compelled to say that "without expressing any opinion concerning the soundness or unsoundness of the decisions in question, we are of the opinion that they should be adhered to, leaving it to the legislature to extend the right of the homestead to cotenants if it shall see fit." This conclusion was reached in view of the rule of *stare decisis,* especially with regard to the rules of law upon the subject of titles to real estate. More than thirteen years have passed

since that decision without any legislative action in the respect referred to, and, of course, what was there said applies now with much more force than it did in 1906.   Since the decision in *Schoonover* v. *Birnbaum, supra,* this general rule has been fully recognized in *United States etc. Co.* v. *Bell,* 153 Cal. 781, [96 Pac. 901] , *Swan* v. *Walden,* 156 Cal. 195, [134 Am. St. Rep. 116, 20 Ann. Cas. 194, 103 Pac. 931], and *Estate of Davidson,* 159 Cal. 98, [115 Pac. 49].   In *Swan* v. *Walden, supra,* a case of a homestead selected by the wife during the lifetime of the parties, the homestead was upheld although the property was held in joint tenancy, but this was because the only joint tenants were the husband and wife, and the wife's selection was of the whole property, and the wife had the power under the law to declare a homestead upon the husband's separate property as well as upon her own property.   As to this situation the court said: "The homestead thus attempted to be declared is upon land, all of which is susceptible at the instance of the wife of having the homestead characteristics impressed upon it.   There is no occasion for segregation or partition or delimitation of boundaries, since the homestead attaches to all of the estate and all of the land.   The reasons which, in the view of this court, made it legally impossible for the husband to declare such a homestead when there was a cotenancy between himself, his wife, or third persons, does not exist in the peculiar instance of the case at bar."    (See, also, *In re Bailard,* 178 Cal. 293, [173 Pac. 170].)   As we have seen in the case at bar, the other tenant in common is a third party.   The reason expressed for the rule enunciated by our decisions, as stated in *Estate of Davidson,* 159 Cal. 98, 101, [115 Pac. 49, 50], is that "on account of the nature of the tenancy, there can be no segregation or delimitation of the boundaries of the particular estate, or interest in the property of the cotenancy sought to be impressed whereby it can be determined as to what particular part of the land the homestead attaches."   In *Estate of Davidson, supra,* it was sought by the surviving wife to have set apart as a probate homestead the deceased husband's undivided half of the property on which they resided at the time of his death, the wife being the owner of the other undivided half, and it was held by the same justices who participated in *Swan* v. *Walden, supra,* that, in view of the rule of our decisions, the husband's

undivided one-half could not be selected as a probate homestead.

Appellant's principal claim is that she is entitled to have her husband's undivided half of this property set apart as a homestead by virtue of the provisions of an act entitled "An Act Relating to Homesteads," adopted by the legislature in the year 1868. (Stats. 1867–68, p. 116.) It is probable, as was said in *Swan* v. *Walden, supra,* that this act was adopted to modify the rule of decision in this very matter. It substantially provided that whenever a party entitled to a homestead under the laws of the state is in exclusive occupation of any particular tract of land, having the same inclosed, and shall select and record and reside upon the same as a homestead, he shall be entitled to the same to the extent of his interest in the property "although such land be held in joint tenancy, or tenancy in common, or such claimant own only an undivided interest." It may be assumed that if this act is still in force, appellant is entitled to have her deceased husband's interest set apart as a homestead, for it was held under this act in *Higgins et al.* v. *Higgins et al.,* 46 Cal. 259, that the wife could select as a homestead the undivided interest of her husband in property exclusively occupied by him, to the exclusion of all other cotenants. But we do not see how it may reasonably be held that the act survived the going into effect of our codes on January 1, 1873. The question whether this particular act was repealed by the codes has never been determined or even discussed by this court, though the act was referred to in passing in both *Swan* v. *Walden, supra,* and *Estate of Davidson, supra.* The act does not appear to have been mentioned in either *Estate of Carriger,* 107 Cal. 618, [40 Pac. 1032], or *Rosenthal* v. *Merced Bank,* 110 Cal. 198, [42 Pac. 640], cases involving attempted selections since the codes took effect. In each of these cases the right to a homestead was denied by the court, although, so far as we can see, the facts were such as to make the act of 1868 applicable, if still in force. The uniform course of our decisions on this matter has been the same since the adoption of the codes as it was prior to the adoption of the act of 1868. We say this much simply for the purpose of showing that this court has never recognized the act of 1868 as surviving the taking effect of the codes. When enacted in 1872 our Civil Code provided, as it still provides, as follows: "No statute,

law, or rule is continued in force because it is consistent with the provisions of this code on the same subject; but in all cases provided for by this code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this code, unless expressly continued in force by it, are repealed or abrogated. . . ." (Section 20.) A similar provision was contained in our Code of Civil Procedure. (Section 18.)

There is no claim that the act of 1868 was expressly continued in force. In title V of part IV of division second of the Civil Code (secs. 1237 to 1269), which was entitled "Homestead," and chapter V, title XI of part III of the Code of Civil Procedure, as originally enacted in 1872, was contained what clearly appears to have been intended as a complete and comprehensive system of laws on the subjects of homesteads. What a homestead consisted of, how and from what it might be selected, when and to what extent it was subject to execution or forced sale, how it might be conveyed, encumbered or abandoned, its value, the rights of parties in the matter of probate homesteads and the manner of setting the same apart—all these things were fully covered by the code provisions. In other words, the whole matter of homesteads was one of the "cases provided for by" the codes. The rule embodied in section 20 of the Civil Code and section 18 of the Code of Civil Procedure is the statement of a well-settled principle applicable in considering the effect of revisory statutes. As was said in *Mack* v. *Jastro,* 126 Cal. 130, [58 Pac. 372] : "Whenever it becomes apparent that a later statute is revisory of the entire matter of an earlier statute, and is designed as a substitute for it, the later statute will prevail, and the earlier statute will be held to have been superseded, even though there be found no inconsistencies or repugnancies between the two. Frequently, these cases arise where the latter statute covering the whole subject matter omits or fails to mention certain terms or requirements found in an earlier, and it is insisted, as here, that those particular provisions of the earlier statute should be held to be still in force. But, as is said by the supreme court of the United States in *Murdoch* v. *Mayor etc.,* 20 Wall. 590, [22 L. Ed. 429, see, also, Rose's U. S. Notes] : . . . 'It will be perceived by this statement that there is no repeal by positive new enactments inconsistent in terms with the old law. It is

the words that are wholly omitted in the new statute which constitute the important feature in the questions thus propounded for discussion. . . . A careful comparison of these two sections can leave no doubt that it was the intention of Congress by the latter statute to revise the entire matter to which they both had reference, to make such changes in the law as it stood as they thought best, and to substitute their will in that regard entirely for the old law upon the subject. We are of opinion that it was their intention to make a new law so far as the present law differed from the former, and that the new law embracing all that was intended to be preserved of the old, omitted what was not so intended, because complete in itself, and repealed all other law on the subject embraced within it. The authorities on this subject are clear and uniform.' " (See, also, *Sponogle* v. *Curnow,* 136 Cal. 580, 584, [69 Pac. 255]; *State* v. *Conkling,* 19 Cal. 501.) Our codes, of course, were intended as complete revisions of the existing laws upon the subjects embraced therein. That was the main purpose of their enactment. And section 20 of the Civil Code and section 18 of the Code of Civil Procedure were enacted for the very purpose of putting it beyond the realm of possible dispute that existing statutes on subjects covered by the codes, whether consistent or not with the provisions of the codes on the same subject, were abrogated, unless expressly continued in force. True it is that there is no express provision in the codes purporting to provide for the particular contingencies provided for by the act of 1868. But what we have quoted from *Mack* v. *Jastro, supra,* fully answers the claim based on this situation. The act of 1868 was one of the existing acts on the general subjects of homesteads, the provisions of which the legislature, in making the revision of the entire law on the subject, must be held to have intended to abrogate. [2] We are satisfied that it must be held that this act was abrogated by the adoption of the codes.

The cases cited by learned counsel on this point are not opposed to our conclusions. None of them involved any act upon a subject as to which, as here, an apparently complete revision was attempted by the codes, and all were decided upon the theory that the act involved was regarding a subject in no way treated in any of the codes. Here, as we have seen, we have in the codes as enacted an apparently complete and comprehensive revision of the law on the subject of home-

steads, and the fact that the legislature did not include therein provisions for the selection of a homestead where the circumstances were as specified in the act of 1868 does not render the latter act one as to a "case" not "provided for" by the code.

The order appealed from is affirmed.

Shaw, J., Wilbur, J., Lennon, J., Lawlor, J., and Melvin, J., concurred.

OLNEY, J.—I concur, but solely on the ground that the question is now determined by the previous decisions of this court. If it were not for those decisions, I believe the rule should be that a homestead may be imposed in the instances provided by the statute regardless of the character of the title of the homestead claimant or his or her spouse, the homestead, of course, affecting only the interests of the claimant or spouse, whatever those interests may be. The only requirement of the statute in this respect is that the claimant be residing upon the premises, and to require more than this and make the validity of the homestead dependent upon the character of the interests affected is without statutory warrant and contrary to the object of the statute. The injustice, I think, is manifest in the present case. It is now too late, however, for this court to reverse its previous decisions, for such reversal would necessarily be retroactive in effect, and would destroy interests and rights acquired in reliance upon the existing decisions. It is hardly necessary to say that this objection would not lie to a change made by the legislature which, of course, would operate only *in futuro*.