**STANDARD OIL CO. OF CALIFORNIA et al. v. UNITED STATES.**

No. 11114.

Circuit Court of Appeals, Ninth Circuit.

Feb. 14, 1946.

Rehearing Denied March 29, 1946.

Before MATHEWS, BONE, and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the above mentioned District Court awarding a sum to the appellee, United States of America, for the loss of services to it of a member of its armed forces.

The action grows out of a traffic accident which occurred on February 7, 1944 in Los Angeles, California, in which a truck of appellant, Standard Oil Company, driven at the time of the accident by appellant, Ira Boone, an employee of Standard Oil, collided with and injured John Etzel, a soldier in the Army of the United States. As a result of these injuries Etzel was unable to perform his duties as a soldier for a period of 29 days.

Etzel's pay during the period of his incapacity amounted to $69.31. He also received army medical care and hospitalization, the reasonable and stipulated value of which was $123.25. On March 16, 1944 Etzel, in return for the sum of $300, executed a release in full to both appellants for his personal injuries.

The Government instituted suit in the court below on April 24, 1945 to recover the total of its payments in wages and medical care during Etzel's incapacity, ($192.56) on the theory that "as a result [of the accident] the services of John Etzel were lost to the plaintiff for the aforesaid period [29 days], and also by reason thereof the plaintiff became liable to pay, and did pay John Etzel as compensation * * * [$69.31 and] * * * expended for hospital care, the sum of $123.25." The lower court gave judgment for plaintiff in the total of these two amounts. The judge was of the opinion that the government-soldier relationship is a "status" similar to that of master and servant, parent and child, or husband and wife, and that therefore, the government has a cause of action for loss of a soldier's services similar to that of a master for loss of the services of his servant, a parent for those of his child, et cetera.

Jennings & Belcher, of Los Angeles, Cal., and H. Rowan Gaither, Jr., Louis V. Crowley, and Arthur E. Cooley, all of San Francisco, Cal., for appellant.

Charles H. Carr, U. S. Atty., and Ronald Walker and Cameron L. Lillie, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Nourse & Jones, of Los Angeles, Cal., amicus curiae.

Appellants do not appeal from the trial court's finding that Boone's negligence caused the injury, but from its finding that the government has a cause of action for loss of a soldier's services. This is the question before this court. This case is

one of first impression in this country.[1] At the outset we are confronted with the problem of what law should apply. There is no federal statute which might afford the government a means for bringing this action and it has been held that "when the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter." United States v. The Thekla, 266 U.S. 328, 339, 340, 45 S.Ct. 112, 113, 69 L.Ed. 313, and see United States v. Moscow-Idaho Seed Co., 9 Cir., 92 F.2d 170, 173, 174. Aside from any federal legislation conferring a right of subrogation or indemnification upon the United States, it would seem that the state rules of substantive common law would govern an action brought by the United States in the role of a private litigant. Erie R. Co. v. Tompkins, 304 U.S. 64, 71, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; United States v. Moscow-Idaho Seed Co., supra, 92 F.2d at pages 173, 174.

Appellant maintains that § 49 of the Civil Code of California is controlling and we are inclined to agree. Appellee does not argue the matter in the briefs, but on oral argument government counsel seemed persuaded that the issue must be determined by California law.

■■ As stated above, the government's sole argument in the court below and in this court is that the relation between government and soldier is that of master and servant, or, at least, a relation analogous thereto. The right of a master to sue for the loss of services of his servant is an old remedy at common law. The action appears to have arisen when the basis of society was that of "status" and when there was no procedure in the King's courts for enforcing a simple contract. In that early day, the servant was looked upon as a member of the master's family, and, thus, the action was similar to writs of trespass for injury to a wife or child, or for debauching a wife, daughter, or female servant. See Admiralty Commissioners v. S.S. Amerika, [1917] A.C. 38, 44, 45, 54 et seq.; Holdsworth, History of English Law, v. 8, p. 429; Wigmore, Interference with Social Relations, 21 Am.L.Rev. 764, 765-769; Green, Relational Interests, 29 Ill.Law.Rev. 460, 1041, 1042.

Today the master-servant relation is generally based on contract. Therefore, the master's cause of action for loss of his employee's services remains as an anomaly in the law for " * * * while intentionally to bring about a breach of contract may give rise to a cause of action, Angle v. Chicago St. P. M. & O. R. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55, no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. See National Sav. Bank v. Ward, 100 U.S. 195, 25 L.Ed. 621. The law does not spread its protection so far." Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 309, 48 S.Ct. 134, 72 L.Ed. 290. See also Admiralty Commissioners v. S.S. Amerika, supra; Pollock on Torts (14th ed., 1939), p. 55; and compare The Federal No. 2, 2 Cir., 21 F.2d 313; Buckley v. Gray, 110 Cal. 339, 42 P. 900, 31 L.R.A. 862, 52 Am.St.Rep. 88; Hall v. Barber Door Co., 218 Cal. 412, 418, 23 P.2d 279.

In California the master's cause of action for the loss of an employee's services is defined in the California Civil Code, § 49, which section is in full as follows:

"The rights of personal relations forbid:

"(a) The abduction or enticement of a child from a parent, or from a guardian entitled to its custody;

---

[1] The Court of King's Bench and the High Court of Australia have considered similar cases: Attorney-General v. Valle-Jones [1935] 2 K.B. 209, and The Commonwealth v. Quince [1944] Argus Law Reports p. 50; [1943] Queensland Law Reporter p. 91; also, Queensland Justices of the Peace Issue (Suppl.), v. 37, p. 137, December 31, 1943. Although the facts of the Valle-Jones case are similar to those of the case at bar we do not deem the case of help to us on the principal question before this court, i. e., the right of the Government to maintain this action at common law. The court in the Valle-Jones case does not discuss the matter, and on p. 213 of 2 K.B., the report shows that the defendant admitted that the government had a cause of action for loss of services. The Quince case is more helpful on this issue and is mentioned infra. Counsel state that it was not brought to the lower court's attention. In a recent case on a similar state of facts, United States v. Atlantic Coast L. R. Co., D.C.N.C.E.D., 64 F.Supp. 289, Gilliam, J., held contrary to the lower court's opinion in the present case.

"(b) The seduction of a person under the age of legal consent;

"(c) Any injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation."

If this section of the Civil Code governs this case, and we believe it does, the government's case must fail for two reasons: first, because the government-soldier relation is not within the scope of § 49 of the Code, and, second, because the government is not a "master" and the soldier is not a "servant" within the meaning of the Code section.

■ First. The trial judge deleted his finding of fact that a master-servant relationship existed in this case. He stated in his opinion that the action was based on injury to the "status" or personal relationship existing between government and soldier, and that defendant could not escape liability by claiming that at common law the relationship "did not have a name." See United States v. Standard Oil Corporation, D.C., 60 F.Supp. 807, 810. The trial judge is evidently of the opinion that the "modern trend" is towards affording protection to rights arising from statuses not protected at common law.[2] In this court, the government has not adopted the trial court's conclusion that interference with the government-soldier relation, standing alone, is a sufficient basis for this suit. The government still argues, as it did in the lower court, that the government-soldier relation is the same as that of master and servant, or analogous thereto.

Whether or not the government-soldier relation is one protected at common law, it does not seem to be within the scope of § 49, for that section definitely limits the causes of action which are based upon an interference with personal relationships to those enumerated in the section. For example, § 49 might have given a cause of action for injuries to parties to other personal relationships similar to that of master and servant alone, i.e., for injuries to

an agent, an independent contractor, a partner, a joint adventurer, et cetera. And even if the government-soldier relationship is the basis for an action at common law, it must be noted that § 49, both as amended in 1905, and in 1939, is in derogation of the common law because other personal relations traditionally protected by that law are withdrawn from the section.[3] The court said in Burlingame v. Traeger, 101 Cal. App. 365, 371, 281 P. 1051, 1053: "It must also be borne in mind that 'our codes, of course, were intended as complete revisions of the existing laws upon the subjects embraced therein' (Estate of Carraghar, 181 Cal. 15, 183 P. 161, 163), and that their provisions establish the law of this state respecting the subjects to which they relate. (In re Apple, 66 Cal. 432, 6 P. 7; McLean v. Blue Point Gravel Min. Co., 51 Cal. 255.) It is only when the Code and other statutes are silent that the common law governs." For these reasons we do not believe that the government-servant relationship alone is within the scope of § 49 of the Civil Code.

■■ Second. Since we do not believe that the government-soldier relationship is protected by § 49 of the Civil Code, we must next consider the government's claim that the government-soldier relationship is the same as that of master and servant. If this argument is correct, the government will, of course, be brought within the scope of § 49(c), which subsection may be termed a definition of the master's action at common law. There are, it is granted, some resemblances between the master-servant and government-soldier relationships, but the distinguishing features are so great that we do not feel that the legislature intended the words "servant" and "master" in § 49 (c) to include within their meaning the words "soldier" and "government."

In modern times the freedom of an employee to enter into and to terminate a contract of employment might be said to be the major distinguishing factor between the two relationships. Labor's many other

[2] The trial court's reliance on the Restatement of Torts, §§ 766, 767, and Original Ballet Russe v. Ballet Theater, 2 Cir., 133 F.2d 187, does not bear him out. Those authorities do not discuss *negligent injury* to a contractual relation of employment, but cases of *malicious attempts* to hurt plaintiff's business and to induce plaintiff's employees to breach their contracts with plaintiff. Such causes of action follow the celebrated case of Lumley v. Gye, 2 El. & Bl. 216. See Green, Relational Interests, supra, pp. 1043, 1044 ff.

[3] California Stats. 1905, p. 68, withdrew the action of a master for the abduction of his servant; California Stats. 1939, pp. 1245, 3037, withdrew the action for abduction or enticement of a wife from her husband, and the action for the seduction of a person over legal age.

rights and privileges recognized today serve to distinguish even further the position of the modern employee from that of the soldier. Even in peace time a soldier who enlists is subject to many strict duties and disciplines which are never impressed on the ordinary employee. See e.g. Articles 58 and 61 of the Articles of War, 10 U.S.C.A. §§ 1530, 1533. But whatever the picture in peace, in times of national emergency it is the duty of the citizen to serve in the protection of his country and every citizen is a potential soldier under the conscription laws. See Arver v. United States, 245 U.S. 366, 378, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856; United States v. Williams, 302 U.S. 46, 48, 58 S.Ct. 81, 82 L.Ed. 39; Falbo v. United States, 320 U.S. 549, 554, 64 S.Ct. 346, 88 L.Ed. 305; Billings v. Truesdell, 321 U.S. 542, 556, 64 S.Ct. 737, 88 L.Ed. 917; Local Board No. 1 v. Connors, 9 Cir., 124 F.2d 388; Compare, The Commonwealth v. Quince, supra, [1944] Argus Law Reports, 50; Hays v. Illinois Terminal Transportation Co., 363 Ill. 397, 2 N.E.2d 309; Goldstein v. State of New York, 281 N.Y. 396, 24 N.E.2d 97, 129 A.L.R. 905; Lind v. Nebraska National Guard, 144 Neb. 122, 12 N.W.2d 652, 150 A.L.R. 1449. Thus the fact that this soldier (Etzel) had entered the army under the draft for the duration of the war emergency makes the position of the soldier even less comparable to that of an employee. The trial judge ably points out the distinctions between soldier and employee at 60 F.Supp. 810. See also McArthur v. The King (Canada) [1943] Ex. C.R. 77, [1943] 3 D.L.R. 225.

But the government argues that because at common law the relation between master and servant was that of "status" there is a similarity to the government-soldier relationship which is also recognized as a "status." In re Grimley, 137 U.S. 147, 151-154, 11 S.Ct. 54, 34 L.Ed. 636; In re Morrissey, 137 U.S. 157, 159, 11 S.Ct. 57, 34 L.Ed. 644; United States v. Williams, supra, 302 U.S. at pages 48, 49, 58 S.Ct. 81, 82 L.Ed. 39; Billings v. Truesdell, supra, 321 U.S. at page 553, 64 S.Ct. 737, 88 L.Ed. 917; see also the dissenting opinions in The Commonwealth v. Quince, supra. As the trial court noted, it is strange that in all these years of wars the government has never asserted this cause of action before. The answer may partially lie in the fact that modernly the action of a master for loss of services is little used.[4] The fact that a sovereign has only asserted this cause of action at common law in a few recent cases does not, of course demonstrate that the government cannot come within the scope of the master's action for loss of services. However, it is indicative of the fact.

We are not impressed by the government's attempted analogy between the relations of master and servant and government and soldier based on the theory of "status." There were many relationships based on status at early common law and there are today, i.e., parent and child, husband and wife, citizen and sovereign. To attempt to analogize the two relationships merely because both are based on a "status" seems without merit. And this is so even though there is a right to control and a duty to serve in both of the statuses. See majority opinions, The Commonwealth v. Quince, supra. We agree with the trial court that the relationship between government and soldier is more legislative than contractual. See United States v. Williams, supra, 302 U.S. pp. 46, 48, 58 S.Ct. 361, 82 L.Ed. 602. For these reasons we cannot conclude that the common law action of a master for loss of his servant's services as defined in § 49(c) of the Civil Code, or as it stands at common law, may be adopted by the government.

■ Our disposition of the case makes it unnecessary for us to consider whether the government has asked for the proper damages in this case,[5] except insofar as the

---

[4] Darmour Productions Corporation v. Herbert M. Baruch Corporation, 135 Cal. App. 351, 27 P.2d 664 is the only California case involving such action by a master that court or counsel have found. See comment, 23 Cal.Law Rev. 420, which also suggests, among other limitations, that, contrary to the Darmour Productions case, actions under § 49 should be limited to menial servants. See also, Green, Relational Interests, supra, pp. 1042, 1043.

[5] It seems at common law that the master's action was for the actual losses that he suffered from the inability of his servant to serve, and not for wages and medical expenses paid during the servant's incapacity. "A master also may bring an action against any man for beating or maiming his servant, but in such case he must assign, as a special reason for so doing, his own damage by the loss of his services." Cooley's Blackstone's Commentaries (4th ed.) v. I, p. 367. Cf. De La

government, in the absence of statutory authority, might have a right of subrogation. "A court of equity may give restitution to the plaintiff and prevent unjust enrichment of the defendant, where the plaintiff's property has been used in discharging an obligation owed by the defendant * * *, by creating in the plaintiff rights similar to those which the obligee * * * had before the obligation was discharged." Restatement of Restitution § 162, Comment a.

■■■ However, it appears in this case that defendant has already discharged this obligation to the principal party, Etzel. In the United States the prevailing rule seems to be that an injured person may recover for wages lost and medical expenses incurred during his incapacity even though such amounts were supplied by insurance, a contract of employment, or gratuitously.[6] Cunnien v. Superior Iron Works, 175 Wis. 172, 184 N.W. 767, 18 A.L.R. 667; Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, and see notes to these cases in 18 A.L.R. 678 and 95 A.L.R. 571, also see 128 A.L.R. 686; Gatzweiler v. Milwaukee Elec. R. & Light Co., 136 Wis. 34, 116 N.W. 633, 18 L.R.A., N.S., 211, 128 Am.St.Rep. 1057, 16 Ann.Cas. 633; Harding v. Town of Townshend, 43 Vt. 536, 538-542, 5 Am.Rep. 304; 4 Restatement of Torts, § 920, Comment e, § 924, Comment c. The California courts have approved this rule. Peri v. Los Angeles Junction Ry., 22 Cal.2d 111, 113, 137 P.2d 441; Gastine v. Ewing, 65 Cal.App.2d 131, 150 P.2d 266; Purcell v. Goldberg, 34 Cal. App.2d 344, 350, 93 P.2d 578; Bencich v. Market St. Ry. Co., 29 Cal.App.2d 641, 647, 85 P.2d 556; Inglewood Park Mausoleum v. Ferguson, 9 Cal.App.2d 217, 49 P.2d 305; Reichle v. Hazie, 22 Cal.App.2d 543, 547, 71 P.2d 849; Loggie v. Interstate Transit Co., 108 Cal.App. 165, 169, 291 P. 618. Therefore, Etzel's release to the defend-

ants, which extended "to all claims of every nature and kind whatsoever", covered his lost wages and medical expenses as elements of damage. These are the amounts which the United States here seeks to recover.[7] Thus even if we may assume that the United States may be subrogated, without statutory authority, to the soldier's claims, it cannot be subrogated to such claims here because defendants have already paid Etzel for these losses. For the same reason the government would have no right of indemnification, even under the broad rule of Restatement of Restitution, § 76. Compare § 2772, California Civil Code. In Crab Orchard Improvement Co. v. Chesapeake & Ohio R., 4 Cir., 115 F.2d 277, and The Federal No. 2, supra, 2 Cir., 21 F.2d 313 it is held that in the absence of contractual or statutory right, the party paying wages and medical expenses is not entitled to subrogation or indemnificatior.. Note also the California rule as to releases and splitting causes of action, Kidd v. Hillman, 14 Cal.App.2d 507, 58 P.2d 662.

■■■ Furthermore, it seems clear that Congress did not intend that for tortious injuries to a soldier in time of war, the government should be subrogated to the soldier's claims for damages. It will be noted that Congress has provided that the government should have the privileges of assignment or subrogation in other and somewhat similar situations. In the Federal Employee's Compensation Act, 5 U.S. C.A. §§ 751–800, it is provided that before benefits may be received the government may require the beneficiary to assign to the government his rights against the negligent party or to prosecute the action in his own name. See § 776. And by § 797, members of the Officers' Reserve Corps and the Enlisted Reserve Corps of the Army are in time of peace made subject to

Torre v. Johnson, 200 Cal. 754, 759, 254 P. 1105; Interstate Tel. & Tel. v. Public Service Elec. Co., 86 N.J.L. 26, 90 A. 1062; City of Philadelphia v. Philadelphia Rapid Transit Co., 337 Pa. 1, 10 A. 2d 434; Chelsea Moving & Trucking Co. v. Ross Towboat Co., 280 Mass. 282, 182 N.E. 477; The Federal No. 2, supra, 21 F.2d at page 314.

6 In its findings of fact the lower court found that the soldier, Etzel, had no claim against defendants for wages or medical care since these were supplied by the United States. As authority for this finding, the court, in its opinion, cited Attorney-General v. Valle-Jones, supra, [1935] 2

K.B., at p. 215. However, it seems the lower court has followed the English rule and not the prevailing American doctrine. See cases cited above, and note comparison of English and American rules in 18 A. L.R. 678 and 95 A.L.R. 571.

7 Provision for medical treatment in this case is found in Army Regulations 40-505, and for pay under Pay Readjustment Act of 1942, as amended, 37 U.S. C.A. §§ 101–120, see § 109. The government states that pay during this type of incapacity is not withheld. Compare Army Regulations, 35-1420, par. 3a; 10 U.S.C.A. § 847a; Article of War 107, 10 U.S.C.A. § 1579.

964

and given the benefits of the Act. Also the World War Veterans' Act, 38 U.S.C.A. §§ 421–576, . makes similar provisions (§ 502) with regard to any cause of action that a person entitled to benefits may have against a third person. Cf. The Steel Inventor, D.C., 36 F.2d 399.

In our opinion authority for this action should come through legislation, and not from an attempt by the courts either to enlarge the scope of an ancient common law cause of action, or to create a new one.

Reversed.