**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO.,**
Plaintiff-Appellant,

v.

**Hartwell C. BARNETT, Defendant,**
**United States of America, Defendant-Appellee.**

No. 30171.

United States Court of Appeals,
Fifth Circuit.

June 16, 1971.

L. W. Anderson, Dallas, Tex., for plaintiff-appellant.

Eldon B. Mahon, U. S. Atty., Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., for defendant-appellee.

Before JONES, BELL and SIMPSON, Circuit Judges.

JONES, Circuit Judge:

The facts are "short and sweet, like the old woman's dance." [1] Hartwell Barnett sustained an injury in the course of and arising out of his employment as a painter with Benjamin G. Monk. He was taken to a Veterans Administration hospital in Dallas, Texas. An examination showed a fractured skull. After he had regained consciousness, he executed a number of documents by one of which he represented that he was without funds or means to obtain hospital and medical treatment. He made no assignment to the Veterans Administration of the United States of his workmen's compensation benefits. As a veteran without means of procuring hospital and medical treatment he was entitled to the services of the Veterans Administration hospital and its medical staff without cost to him.

This suit was instituted by the appellant, Pennsylvania National Mutual Casualty Company, seeking to set aside an award of the Texas Industrial Accident Board which directed payment of workmen's compensation benefits to Barnett and the United States on behalf of the Veterans Administration. The Board's award was set aside, and a trial de novo was had in the district court on all issues. After considerable pretrial hearings, Barnett's claim was severed from that of the United States, and a compromise settlement was made with Barnett. The district court made findings of fact and conclusions of law, and entered judgment in favor of the United States. From that judgment this appeal was taken. The question presented for review is whether the United States can recover from the workmen's compensation insurance carrier of Barnett's employer the value of hospitalization and medical services rendered to him by the Veterans Administration. A regulation of the Veterans Administration [2] provides for recovery by the United States when its provisions have been met. Pennsylvania contends that any right of the Veterans Administration to recover was conditioned upon the procurement of an assignment pursuant to the regulation. The unambiguous language of the regulation sustains its position. The appellant urges that the United States cannot assert any independent right of recovery under the law of Texas. The correctness of its contention is shown by United States v. Standard Oil Company, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. In that case, the over broad statement in Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, [3] is modi-

---

1. The quotation is from Abraham Lincoln's first political speech made in 1832.

2. "(d) Persons hospitalized pursuant to paragraph (c) (1) or (d) of Sec. 17.47, who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:

\* \* \* \* \* \* \*

"(1) (iii) 'Workmen's Compensation' or 'employer's liability' statutes, State or Federal; and

\* \* \* \* \* \* \*

"(2) By reason of statutory or other relationships with third parties, including those liable for damages because of negligence or other legal wrong; will not be furnished hospital care, medical or surgical treatment, without charge therefor to the extent of the amount for which such parties, referred to in subparagraph (1) or (2) of this paragraph, are, or will become liable. Such patients will be requested to execute an appropriate assignment as prescribed in this paragraph. Patients who, it is believed, may be entitled to care under any one of the plans in subparagraph (1) of this paragraph, will be requested to execute VA Form 10–2381, Power of Attorney and Agreement. Those patients who, it is believed, may be entitled to hospital care under the circumstances prescribed in subparagraph (2) of this paragraph will be requested to complete SF 96A. Notice of this assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained, bill therefor will be mailed such party or parties." 38 C.F.R. § 17.48(d) (1970).

3. "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. \* \* \* There is no federal general common law."

fied by the holding that the cases of the class in which this case falls are not to be controlled by state law. In the Standard Oil case, a soldier in the United States Army was injured by the negligent operation of a truck. The expenses of hospitalization and the continued pay of the soldier during this period were borne by the United States. The Government brought suit against the owner and driver of the truck to recover hospitalization expenses and the value of the soldier's lost services. The district court's decision for the United States was reversed by the Court of Appeals. Standard Oil Co. of Cal. v. United States, 9th Cir. 1946, 153 F.2d 958. In affirming the Court of Appeals, the Supreme Court held that Federal and not state law applied to the distinctively Federal relationship of Government and soldier, even though Congress had not acted affirmatively on the specific question. The Court held that it was for the Congress and not the courts to make laws allowing Government recovery in such situations. In the absence of legislation in these areas involving Federal fiscal policy, recovery was denied to the United States. The Court was concerned with "national disposition" rather than "diversified state rulings" upon exclusively Federal matters.

These considerations of uniformity apply to contractual or non-tortious relations as well as in tort situations. United States v. Standard Oil Co., supra; National Metropolitan Bank v. United States, 1945, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383; Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838; D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 1942, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956; Wright, Law of Federal Courts, 2nd Ed. 1970, § 60.

Subsequent to the Standard Oil case and in response to its suggestion that Congress might act, a Federal statute was passed in 1962 which provides, in part:

In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim. 42 U.S.C.A. § 2651(a).

The statute is limited in its operation to tort claims.

The Standard Oil case precludes our making a decision here under the law of Texas. The regulation hereinabove quoted does not apply in the absence of an assignment and none was made by Barnett. The quoted statute only applies in tort situations and does not apply where the source of the claim is workmen's compensation. Thus, under the principles announced in the Standard Oil case we are to fashion a Federal rule out of our "genius, general knowledge and pre-

vious information"[4] We cannot impute to the framers of the regulation an intent that it should be invoked in the absence of an assignment. We cannot impute to the Congress an intent to apply the statute where the care and treatment was not for an injury arising out of a tort. We cannot find in regulation or statute any indication of an intent that recovery should be permitted for hospitalization furnished by the Veterans Administration to a veteran from a workmen's compensation carrier. The fiscal policy announced in the Standard Oil case is the policy which must prevail in this case.

The relationship of a former serviceman to the Government is no less a Federal relationship requiring the uniformity of the Standard Oil doctrine than the relationship of a present serviceman to the Government. See Plesha v. United States, 9th Cir. 1955, 227 F.2d 624, affirmed, 1957, 352 U.S. 202, 77 S.Ct. 275, 1 L.Ed. 254.

It is appropriate to end the decision where it began; with the Standard Oil case. From it we quote:

" * * * the question is one of federal policy, affecting not merely the federal judicial establishment and the groundings of its action, but also the Government's legal interests and relations. * * *. And the answer to be given necessarily is dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law. These include not only considerations of federal supremacy in the performance of federal functions, but of the need for uniformity and, in some instances, inferences properly to be drawn from the fact that Congress, though cognizant of the particular problem, has taken no action to change longsettled ways of handling it.

\* \* \* \* \* \*

"The question, therefore, is chiefly one of federal fiscal policy, not of special or peculiar concern to the states or their citizens. And because those matters ordinarily are appropriate for uniform national treatment rather than diversified local disposition, as well where Congress has not acted affirmatively as where it has, they are more fittingly determinable by independent federal judicial decision than by reference to varying state policies.

\* \* \* \* \* \*

"Among others, one trouble with this is that the situation is not new, at any rate not so new that Congress can be presumed not to have known of it or to have acted in the light of that knowledge.

"When Congress has thought it necessary to take steps to prevent interference with federal funds, property or relations, it has taken positive action to that end. We think it would have done so here, if that had been its desire. This it may still do, if or when it so wishes." 332 U.S. 301, 309–311, 315–316, 67 S.Ct. 1604, 1609, 1611–1612, 91 L.Ed. 2067.

The Fifth Circuit cases of United States v. United Services Automobile Association, 5th Cir. 1970, 431 F.2d 735; United States v. Government Employees Insurance Company, 5th Cir. 1971, 440 F.2d 1338, and United States v. Haynes, 5th Cir. 1971, 445 F.2d 907, are not dispositive of the issues here presented. Nothing persuasive in reaching a decision here is to be found in United States v. Merrigan, 3rd Cir. 1968, 389 F.2d 21, 7 A.L.R.Fed. 279, or in the A.L.R. Annotation thereto. Similar in its facts to this case and reaching the same conclusion is United States v. Harleysville Mutual Casualty Company, D.Md.1957, 150 F.Supp. 326.

---

4. This phrase was frequently used by the late Miles W. Lewis, Judge of the Fourth Judicial Circuit of the State of Florida who never said whether it was original with him or borrowed.

The judgment of the district court is reversed and the cause is remanded for the entry of a judgment for the appellant.

Reversed and remanded.