**TEXAS EMPLOYERS INSURANCE ASSOCIATION**

v.

**UNITED STATES of America, by and through its Agency, Veterans Administration.**

**No. CA 1–74–40.**

United States District Court,
N. D. Texas,
Abilene Division.

Feb. 15, 1975.

J. M. Lee, Steve Suttle, Abilene, Tex., for plaintiff.

Wm. L. Johnson, Jr., Fort Worth, Tex., for defendant.

## OPINION

BREWSTER, District Judge.

This action has furnished the Court with the rare opportunity to try a case which was originally filed in a Texas justice of the peace court.[1] The prosecution and defense hereof will, of course, cost each side several times more than the $144.00 involved. The parties claim that such expense is justified because the legal issue to be decided is a recurring one. It is another phase of the general question before the courts in the two cases cited below of the right of the government to recover from a third party the value of hospital and medical services furnished by it without cost to members or ex-members of its armed forces. The only federal appellate court decisions on the point are United States v. Standard Oil Co., 332 U.S. 301, 67 S. Ct. 1604, 91 L.Ed. 2067 (1947),[2] and Pennsylvania National Mutual Cas. Ins. Co. v. Barnett, 5 Cir., 445 F.2d 573 (1971).

The injuries necessitating the hospital and medical services in the Standard Oil Co. case were sustained by a soldier in a collision with a privately owned truck occurring under circumstances giving rise to a tort action. Though the amount of the government's claim was less than $200, the Supreme Court granted certiorari because of "the novelty and importance of the principal question",[3] and wrote a fifteen page opinion on it. The reason given for the importance of the question was that "the issue comes down in final consequence to a question of federal fiscal policy", the determination of which was vested in Congress. Liability was denied because Congress had not authorized collection of claims of the type involved. Congress later granted such au-

1. The maximum jurisdictional amount in justice courts in Texas is $200, exclusive of interest. The justice of the peace, usually referred to as the "J.P.", is not required to be, and seldom is, a lawyer. Where a jury is demanded, the jury is the sole judge of the law, as well as the facts, without any instructions from the J.P. The result is that, as one famous J.P. once said, cases in justice courts are usually determined in accordance with "the broad fundamental principles of law and equity". Getting on the level of the justice courts is not as much of a come down as it might appear to be on the surface. Justice courts in Texas are creatures of the State Constitution, and they were the first courts to exist in the State. Some famous J.P.'s, such as Roy Bean, the "Law West of the Pecos", and, in more recent years, Bill Richburg, the "Law West of the Trinity", will be remembered by the public long after federal judges in Texas are forgotten.

2. The citation of the Court of Appeals opinion in the Standard Oil Co. case is 9 Cir., 153 F.2d 958.

3. 332 U.S., at 302, 67 S.Ct., at 1605, 91 L. Ed., at 2069.

thority in tort cases by the enactment of 42 U.S.C. § 2651(a).

In the Pennsylvania National case, the government attempted to recover the value of hospital and medical services furnished an ex-member of the armed forces by the Veterans Administration in the treatment of injuries received under such circumstances as to be covered by the Workmen's Compensation Act of Texas. The government relied upon 42 U.S.C. § 2651(a),[4] and C.F.R., Sec. 17.-48(d)[5] for authority to assert its claim. The Court of Appeals held that the statute was inapplicable because no tort situation was involved,[6] and that the regulation could not be considered because it required an assignment of the claim from the patient, which the Veterans Administration did not have.[7]

4. 42 U.S.C. § 2651(a) provides:

 § *2651. Recovery by United States—Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment*

 (a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.

5. 38 C.F.R., Sec. 17.48(d) reads:

 § *17.48 Considerations applicable in determining eligibility for hospital or domiciliary care.*

 (d) Persons hospitalized pursuant to paragraph (c)(1), (d) or (f) of § 17.47, who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:

 (1) (i) Membership in a union, fraternal or other organization;

 (ii) Rights under a group hospitalization plan, or under any of the prepay medical care or insurance contracts or plans which provide for payment or reimbursement in whole or in part, for the cost of medical or hospital care, and conditions the obligation of the insurer to pay upon payment or incurrence of liability by the person covered;

 (iii) "Workmen's Compensation" or "employer's liability" statutes, State or Federal; and

 (iv) Right to maintenance and cure in admiralty, or

 (2) By reason of statutory or other relationships with third parties, including those liable for damages because of negligence or other legal wrong; will not be furnished hospital care, medical or surgical treatment, without charge therefor to the extent of the amount for which such parties, referred to in subparagraph (1) or (2) of this paragraph, are, or will become liable. Such patients will be requested to execute an appropriate assignment as prescribed in this paragraph. Patients who, it is believed, may be entitled to care under any one of the plans in subparagraph (1) of this paragraph will be requested to execute VA Form 10-2381, Power of Attorney and Agreement. Those patients who, it is believed, may be entitled to hospital care under the circumstances prescribed in subparagraph (2) of this paragraph will be requested to complete VA Form 2-4763. Notice of this assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained, bill therefor will be mailed such party or parties.

6. The following quotations are from the opinion, 445 F.2d at page 575:

 "The statute is limited in its operation to tort claims."

 ". . . The quoted statute only applies in tort situations and does not apply where the course of the claim is workmen's compensation . . ."

7. ". . . The regulation hereinabove quoted does not apply in the absence of an assignment and none was made by Barnett . . ."

The present case also involves a claim by the Veterans Administration for hospital and medical services furnished by it to an ex-service man on account of injuries covered by the Texas Workmen's Compensation Act. The new wrinkle present here is that the Veterans Administration took an assignment from the veteran of his claim to the extent of the value of the services supplied by it.

It would ordinarily be expected that where there are three cases involving only the one question of the right of the government to recover from a third party the value of hospital and medical services furnished free of charge to an injured member or ex-member of the armed forces, thorough opinions of the Supreme Court in the first case and of the Court of Appeals in the second case a few years later would leave no issue of importance for the third case. However, the claim of the government here that an administrative agency has authority to create a new substantial liability affecting the federal fiscal policy by the adoption of a regulation, when the Supreme Court has said that such power should be exercised solely by Congress, presents a question which "ought to make Bentham's skeleton rattle."[8]

This case was tried before the Court without a jury. The only issue in the case is the legal one heretofore stated. The facts are established as a matter of law either by stipulation or by undisputed documentary evidence. They need be only briefly summarized.

On July 7, 1973, Leslie D. Swiggart sustained an on-the-job injury in the course of his employment for the Pool Company in Big Spring, Howard County, Texas. At the time of such injury, the Pool Company was a workmen's compensation subscriber under an insurance policy issued to it by Texas Employers Insurance Association (Texas Employers), which policy provided for payment of benefits to employees of Pool Company in accordance with the Workmen's Compensation Act of Texas. Art. 8306, Vernon's Ann.Civ.St.[9] Those benefits

8. The language quoted is borrowed from Mr. Justice Frankfurter's dissenting opinion in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 473, 71 S.Ct. 416, 422, 95 L.Ed. 417, 424 (1951).

9. The portion of the Workmen's Compensation Act dealing with benefits for treatment of injuries is Section 7, of Article 8306, which provides:

Art. 8306, sec. 7. Medical services

Sec. 7. *The association shall furnish such medical aid, hospital services, nursing, chiropractic services, and medicines as may reasonably be required at the time of the injury and at any time thereafter to cure and relieve from the effects naturally resulting from the injury.* Such treatment shall include treatments necessary to physical rehabilitation, including proper fitting and training in the use of prosthetic appliances, for such period as the nature of the injury may require or as necessary to reasonably restore the employee to his normal level of physical capacity or as necessary to give reasonable relief from pain, but shall not include any other phase of vocational rehabilitation. The obligation of the association to provide hospital services as herein provided shall not be held to include any obligation on the part of the association to pay for medical, nursing or surgical services not ordinarily provided by hospitals as a part of their services. If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed after notice of the injury to the association or subscriber, the injured employee may provide said medical aid, nursing, hospital services, chiropractic services, and medicines at the cost and expense of the association. The employee shall not be entitled to recover any amount expended or incurred by him for said medical aid, hospital services, nursing, chiropractic services, or medicines, nor shall any person who supplied the same be entitled to recover of the association therefor, unless the association or subscriber shall have had notice of the injury and shall have refused, failed or neglected to furnish it or them within a reasonable time. At the time of the injury or immediately thereafter, if necessary, the employee shall have the right to call in any available physician, surgeon, or chiropractor to administer first-aid treatment as may be reasonably necessary at the expense of the association.

Upon receipt thereof, the Board shall promptly analyze each notice of injury incurred by an injured employee covered under this law. If the Board concludes that

included hospital and medical services and medicines reasonably necessary for the treatment of injuries covered by the Act. Following his injury, Swiggart received medical care and treatment having a reasonable value of $144.00 from the Veterans Administration Hospital in Big Spring, Texas. As an ex-service man, he was entitled to such hospital and medical services without charge to him, and therefore incurred no expense in connection with them.

On July 9, 1973, Swiggart executed an assignment on V. A. Form 1023 to the Administrator of Veterans Affairs for all claims and demands which he might have by reason of any liability of third parties for medical and hospital care and treatment. The assignment was limited to an amount equal to the reasonable charges of hospital and medical care and treatment which Swiggart received. Thereafter, the Veterans Administration, purporting to act under the authority of 38 C.F.R., Sec. 17.48(d), filed with the Texas Industrial Accident Board its claim for the value of such services. On July 18, 1974, the Board entered its award ordering payment of $144.00 to the Veterans Administration.

Texas Employers obviously had some doubt about whether jurisdiction of its suit to set aside the $144.00 award of the Board was vested in the justice court or in the district court. It protected itself by filing its action in each such court in Big Spring, Texas. Both of the cases were removed by the United States to this Court, where they were consolidated for trial.

The Veterans Administration contends that the assignment from Swiggart entitled it to recover under 38 C.F.R., Sec. 17.48(d) the medical and hospital services rendered to Swiggart from the workmen's compensation insurance carrier. Texas Employers contends that the Veterans Administration is authorized by Congress to recover such expenses from third parties only under circumstances creating a tort liability [42 U.S.C., Sec. 2651(a)], and that 38 C.F.R., Sec. 17.48(d) does not create a right of recovery by the Veterans Administration against a workmen's compensation insurance carrier. Alternatively, Texas Employers contends that if 38 C.F.R., Sec. 17.48(d) should be construed to create such a right of recovery, the regulation would be invalid to that extent because it would exceed the statutory authority governing the Veterans Administration. Further, in the alternative, Texas Employers contends that the assignment from Swiggart to the Veterans Administration is void under the provisions of the Texas workmen's compensation law.

■ The holding in *Pennsylvania National* shattered any hopes that the government had to assert the kind of claim here involved under the present statutes. The only recourse left to it under the existing status of things, other than to press for passage of the necessary statute, was to rely upon the regulation of

vocational rehabilitation is indicated in any such case, it immediately shall take the necessary steps to inform the injured employee of the services and facilities available to him under the Texas Program of Vocational Rehabilitation for Disabled Persons administered by the Vocational Rehabilitation Division of the Texas Education Agency and the Board immediately shall notify said Vocational Rehabilitation Division of such case. In each such case recommendation of services and facilities shall be made after consultation by the Board with the physician or chiropractor furnishing medical aid or chiropractic services as required by this Section, who shall retain general supervision of treatment of the injured employee and, should the employee request it, the Board shall consult with a physician or chiropractor of his own selection. The Board shall co-operate with said Vocational Rehabilitation Division with reference to the work of said Division in providing said services and facilities to injured employees covered under the provisions of this law. Acts 1917, p. 269; Acts 1923, p. 384; Acts 1939, 46th Leg., p. 712, § 1; Acts 1947, 50th Leg., p. 521, ch. 307, § 1; Acts 1953, 53rd Leg., p. 493, ch. 178, § 2; Acts 1957, 55th Leg., p. 1186, ch. 397, § 1.

the Veterans Administration [38 C.F.R., Sec. 17.48(d)]. There is no contention that the regulation expressly gives the necessary authority, Neither is it contended that *Pennsylvania National* actually holds that the regulation implies such authority. The most that can be made of the government's position is that it argues that *Pennsylvania National* implies that the regulation implies that the authority is given. The Court does not agree.

The opinion in the Standard Oil case begins with the statement that the Court is being asked "to create a new substantive legal liability without legislative aid." 332 U.S., at 302, 67 S.Ct., at 1605, 91 L.Ed., at 2068. It says that "we have not here simply a question of creating a new liability in the nature of a tort" but one which "comes down in final consequence to a question of federal fiscal policy, coupled with considerations concerning the need for and the appropriateness of means to be used in executing the policy sought to be established." 302 U.S., at 314, 67 S.Ct., at 1611, 91 L.Ed., at 2075. The following language is taken from the concluding portion of the opinion, 302 U.S., at 314–316, 67 S.Ct. at 1611, 91 L.Ed., at 2075–76:

"Whatever the merits of the policy, its conversion into law is a proper subject of congressional action, not for any creative power of ours. Congress, not this Court or the other federal courts, is the custodian of the national purse. By the same token it is the primary and most often the exclusive arbiter of federal fiscal affairs. And these comprehend, as we have said, securing the treasury or the government against financial losses however inflicted, including requiring reimbursement for injuries creating them, as well as filling the treasury itself."

" . . . . Among others, one trouble with this is that the situation is not new, at any rate not so new that Congress can be presumed not to have known of it or to have acted in the light of that knowledge.

"When Congress has thought it necessary to take steps to prevent interference with federal funds, property or relations, it has taken positive action to that end. *We think it would have done so here, if it had been its desire. This it may still do, if or when it so wishes.*" (Emphasis supplied)

 The Veterans Administration derives its power to make rules and regulations from 38 U.S.C. §§ 210(c) and 621.[10] So far as they are material here, the laws administered by the Veterans' Administration and are consistent therewith, including regulations with respect to the nature and extent of proofs and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws, the forms of application by claimants under such laws, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards.

*Subchapter III.—Miscellaneous Provisions Relating To Hospital Care And Medical Treatment Of Veterans*

§ *621. Power to make rules and regulations*

The Administrator shall prescribe—

(1) such rules and procedure governing the furnishing of hospital and domiciliary care as he may deem proper and necessary;

---

10. 38 U.S.C. §§ 210(c) and 621 provide:

*Subchapter I.—Veterans' Administration*

§ *201. Veterans' Administration an independent agency*

*Code of Federal Regulations*

Conduct and responsibilities of Veterans Administration employees, see 38 CFR O.-735–1 et seq.

*Subchapter II.—Administrator Of Veterans' Affairs*

§ *210. Appointment and general authority of Administrator: Deputy Administrator*

(a) The Administrator of Veterans' Affairs is the head of the Veterans' Administration. He is appointed by the President, by and with the advice and consent of the Senate.

[*See main volume for text of (b)*]

(c)(1) The Administrator has authority to make all rules and regulations which are necessary or appropriate to carry out

they authorize the Administrator to prescribe "all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veteran's Administration and are consistent therewith" [Sec. 210(c)], and "such rules and procedure governing the furnishing of hospital and domiciliary care as he may deem proper and necessary" [Sec. 621(1)], and "limitations in connection with the furnishing of hospital and domiciliary care" [Sec. 621(2)]. These statutes contemplate only rules and regulations implementing powers given the Veterans Administration by law, and providing standards of conduct and procedure for the operation of the Administration. If 38 C.F.R., Sec. 17.48(d) were given the meaning the government contends for here, it would go beyond the statutory authority and, to borrow from the language in one of the quotations from the Standard Oil case, create "a new substantial legal liability" affecting "the federal fiscal policy". It would be in the teeth of the holding in that case. If the Administrator of the Veterans Administration has implied authority to adopt the kind of regulation here contended for, he would have the same authority to prescribe other regulations affecting federal fiscal policy as long as they involved the Veterans Administration. Examination of the Acts creating many of the federal administrative agencies reveals that most of them are given statutory authority to make rules and regulations similar in nature to that vested in the Administrator of Veterans Affairs by the statutes cited above. If the administrator or director of one of the agencies has authority to enact regulations of a substantive nature dabbling with the federal fiscal policy, all of the others similarly situated have it. It would be unreasonable to say that Congress intended to give such important authority to officials who could not have the capacity and resources to deal with the overall problems involved. None of the safeguards, such as public hearings, debate, consideration by over six hundred members of Congress, veto, etc., which are provided in connection with Congressional legislation, would exist. One man, the administrator or director, acting alone, would make the decision on the basis of information from sources he, himself, would choose, without any checks and balances. If the regulation should be given the far reaching effect that the government here contends for, it would be invalid on the ground that it exceeds the authority given by statute.

The Court does not agree with the contention that the Pennsylvania National case holds by implication that the government has a right to maintain this type of action if the Veterans Administration has an assignment of a portion of the workmen's compensation benefits from the injured employee. In that case, the government was claiming that 38 C.F.R., Sec. 17.48(d) gave it authority to assert the action. All that the Court had to say was that it did not even get to the consideration, of Sec. 17.48(d) in the absence of an assignment. It would be unreasonable to think that the Court in that case intended to hold that Sec. 17.48(d) gave the govern-

(2) limitations in connection with the furnishing of hospital and domiciliary care; and
(3) such rules and regulations as he deems necessary in order to promote good conduct on the part of persons who are receiving hospital or domiciliary care in Veterans' Administration facilities.
Pub.L. 85–857, Sept. 2, 1958, 72 Stat. 1143.

*Historical Note*

*Derivation.* Based on title 38, U.S.C., 1952 ed., Supp. V, § 2521 (Pub.L. 85–56, Title V, § 521, June 17, 1957, 71 Stat. 113).

*Earlier Laws.* Corresponding provisions in prior law were contained in sections 439, 706 of Title 38, Pensions, Bonuses and Veterans' Relief, and Veterans' Regulation No. 6(a), par. V (June 7, 1924, c. 320, Title I, § 11, 43 Stat. 611; Mar. 20, 1933, c. 3, Title I, § 6, 48 Stat. 9; June 16, 1933, c. 101, § 1, 48 Stat. 301; Ex. Ord. No. 6232, July 28, 1933; Mar. 28, 1934, c. 102, Title III, § 29, 48 Stat. 525; Aug. 23, 1935, c. 621, § 1, 49 Stat. 729).

*Cross References*

Powers and duties of Administrator, see section 210 of this title.

ment the authority to prosecute this type of claim by merely saying in effect that if the Veterans Administration just had an assignment from the injured veteran it would have it made. It is common sense to believe that if the Court had thought Sec. 17.48(d) was properly invoked, it would have considered the serious question of whether the language of the regulation actually purported to create a new liability that affected federal fiscal policy, and of whether the regulation exceeded the authority given in 38 U.S.C. §§ 210(c) and 621, and of whether an assignment by an injured employee of a portion of his compensation benefits could legally be given in the face of the provisions of Art. 8306, Sec. 3, Vernon's Ann.Civ.St., hereinafter discussed. All of these questions were important and had to be passed on if Sec. 17.48(d) was in the picture.

It is the opinion of this Court that Swiggart's assignment to the Veterans Administration, even if valid, did not improve the government's position over what it was in *Pennsylvania National* without an assignment from the injured veteran. That is because:

> "Claims for expenses incurred for medical and hospital services *may be prosecuted by the injured workman or by owners of the claims,* and right of recovery may be adjudicated by the Board and by the courts in the same or in entirely separate proceedings and suits . . . " Texas Cas. Ins. Co. v. Beasley, Tex., 391 S.W.2d 33, 40 (1965). Emphasis added.

The following in regard to the right to recover the value for services necessary in the treatment of compensatory injuries is quoted from Transport Ins. Co. v. Polk, Tex., 400 S.W.2d 881, 883 (1966):

> " . . . Stating its requirements affirmatively, the section says that *either of two persons* can seek recovery. The employee himself can recover amounts that he has 'expended or incurred.' The employee is not the only one who can recover, however. The section goes on to state that 'any per-

son who has supplied the same (is) entitled to recover of the association therefor . . . .' " Emphasis added.

See also Maryland Cas. Co. v. Hendrick Memorial Hospital, Tex.Com.App., 141 Tex. 23, 169 S.W.2d 969 (1948), opinion adopted by Supreme Court.

For many years then, including the period of the trial and appeal of the Pennsylvania National case, the supplier of services necessary for treatment of injuries compensable under the Act has had the right to bring its own action to recover the reasonable value of such services. If the injured employee has not "expended or incurred" any amounts for such services, the supplier is the one to prosecute the claim. Transport Ins. Co. v. Polk, supra. The Veterans Administration did not need any assignment from the veteran in the Pennsylvania National case to assert its claim, if it had the federal legislative authority to do so under the rule announced in the Standard Oil case. The failure of the Administration to recover in the Pennsylvania National case was due to its lack of congressional authority rather than to lack of an assignment from the patient.

█ If the regulation gave the authority claimed by the government, and if such a regulation were valid, the government would still be faced with the proposition that the assignment in this particular case would be void under the provisions of the Workmen's Compensation Act. Art. 8306, Sec. 3, Vernon's Ann.Civ.St. provides in pertinent part:

> " . . . All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits and claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void. . . . "

The prohibition in this statute against assignments includes charges for hospital and medical benefits under the Act.

**150**

Highlands Ins. Co. v. Daniel, Tex.Civ. App., 410 S.W.2d 491 (1967), writ ref., n.r.e.; Lively v. Blue Cross Hospital Service, Inc., Tex.Civ.App., 488 S.W.2d 474 (1972), no writ history.

The government argues that the above portion of the Workmen's Compensation Act is unenforceable in this case because of the Supremacy Clause of the Constitution of the United States. Article VI, Clause 2. The situation here, however, is different from the usual case where a state law interferes with or is contrary to federal law. The government has sued upon a contract in the form of an insurance policy issued under the Texas Workmen's Compensation Act. The Act is in derogation of the common law. Truck Ins. Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521, 523 (1960). That case states at p. 526: " . . . The statute defines the rights and liabilities of all parties to the insurance contract. . . ." Maryland Cas. Co. v. Hendrick Memorial Hospital, supra, 169 S.W.2d, at 973, opinion adopted by Supreme Court, says: "The provisions of the Workmen's Compensation Law became part of the contracts executed pursuant to it by those who bring themselves within the scope of its operation. . . ." See also: National Mutual Cas. Co.v. Lowery, 136 Tex. 188, 148 S. W.2d 1089, 1091 (1940), and Houston Fire & Cas. Co. v. Dieter, Tex.S.Ct., 409 S.W.2d 838 (1966). The provision of the Workmen's Compensation Act that an injured employee could not assign any of his benefits under the Act was therefore an integral part of the written contract of insurance sued upon by the government. It is fundamental that the contract must be construed as a whole. Lion Oil Co. v. Gulf Oil Corp., 5 Cir., 181 F.2d 731 (1950); Pickren v. United States, 5 Cir., 378 F.2d 595 (1967); University Interscholastic League v. Midwestern University, 152 Tex. 124, 255 S.W.2d 177 (1953). The government had to take the contract as a whole. It could not seek to recover under this type of action which was a creature of statute and attempt to reap the

benefits without accepting the burdens under the statute. It might as well have said that it was not going to follow the unique procedure under the Act of taking its claim to the Industrial Accident Board before going to court. The Texas Workmen's Compensation Act is a package deal, and must be accepted as such by *any* litigant seeking to recover benefits under it.

This opinion will close with the same theme found in the concluding portions of the opinions in the Standard Oil and Pennsylvania National cases. This problem has existed for a long time. Congress is bound to be familiar with it, and can pass a statute at any time it desires to give the Veterans Administration the necessary authority to assert its claim. Until that time comes, if it does, the Veterans Administration will have to live with the situation as it now is.

Judgment will be entered in favor of Texas Employers denying the government's claim.

This opinion will serve as the Court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.