**UNITED STATES of America**

**v.**

**Walter H. KIRKLAND, d/b/a Kirkland Brothers Distributors, and Casualty Reciprocal Exchange.**

**Civ. No. 3–75–178.**

United States District Court, E. D. Tennessee, N. D.

Oct. 13, 1975.

W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

David E. Smith, Knoxville, Tenn., for defendant.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This case involves the question of whether the United States can maintain an action against an Armed Forces veteran's employer or workmen's compensation carrier for the value of hospital and medical services furnished free of charge to the veteran for injuries sustained in the course of his employment. All parties have moved for summary judgment on the issue of the Government's right to maintain this action. The facts, to the extent necessary to rule on the motions for summary judgment, have been established by the complaint, the answers, admissions, and the pre-trial order.

Daniel Stewart is a veteran who was injured on November 28, 1973, in the course of his employment with defendant Walter H. Kirkland, d/b/a Kirkland Brothers Distributors [hereinafter "Kirkland"]. Defendant Casualty Reciprocal Exchange [hereinafter CRE] is Kirkland's workmen's compensation carrier under the Tennessee Workmen's Compensation Act, T.C.A. § 50–901 et seq. Stewart was hospitalized at University of Tennessee Memorial Hospital until January 22, 1974, when he was transferred to the Veterans Administration [hereinafter "VA"] Hospital in Memphis.[1] On February 14, 1974, VA obtained an assignment of all claims that Stewart might have by reason of workmen's compensation insurance. Kirkland was notified on the same date of Stewart's admission and the assignment. Stewart remained at the VA Hospital until June 7, 1974.

CRE paid the cost of Stewart's hospitalization at the University of Tennessee Memorial Hospital. The VA sent four bills to CRE for services rendered, the last of which was dated June 21, 1974 and stated an amount due of $10,073.64. CRE denied payment and the Government instituted the present action.

The present case represents one facet of a continuing controversy over the Government's right to be reimbursed by third persons for the cost of such hospital and medical services. The issues presently before the Court can be placed in proper perspective by reviewing four previous cases in which courts have addressed similar or closely related issues. The first such case is *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

In *Standard Oil*, a soldier was hit by a truck under circumstances creating tort liability in both the owner and driver of the truck. The Government bore the soldier's hospitalization expenses and continued to pay him his military salary during the disability period. The Government filed an action in District Court against the owner and driver of the truck to recover the money expended for hospitalization and military salary during the disability period. The District Court rendered judgment on the Government's behalf, 60 F.Supp. 807 (S.D.Cal.1945), and the Court of Appeals reversed, 153 F.2d 958 (9th Cir. 1946). Although the Government's claim amounted only to $192.76, the Supreme Court granted certiorari "because of the novelty and importance of the principal question," 332 U.S. 301, 302, 67 S.Ct. 1604, 1605.

The Supreme Court considered the Government's claim as something more than the claim of a subrogee to the soldier's rights against the third party tortfeasors. Significantly, the Court found that the claim was predicated upon an independent liability owed directly to the Government for tortious interference with the Government-soldier relationship. *Id.* at 304, n. 5, 67 S.Ct. 1604. The Government's right in this situation, the Court reasoned, "comes down in final consequence to a

1. The question of whether the services provided to Stewart at the VA Hospital are all covered under the Tennessee Workmen's Compensation Act has been reserved pending the Court's ruling on the motions for summary judgment.

question of federal fiscal policy." *Id.* at 314, 67 S.Ct. at 1611. Declining to exercise judicial power in that area, the Court stated:

> "Whatever the merits of the policy, its conversion into law is a proper subject for congressional action, not for any creative power of ours. Congress, not this Court or the other federal courts, is the custodian of the national purse. By the same token it is the primary and most often the exclusive arbiter of federal fiscal affairs. And these comprehend, as we have said, securing the treasury or the government against financial losses however inflicted, including requiring reimbursement for injuries creating them, as well as filling the treasury itself." *Id.* at 314–15, 67 S.Ct. at 1611.

Congressional response to *Standard Oil* was slow in coming. Fifteen years later Congress enacted the Medical Care Recovery Act, 42 U.S.C. § 2651–53, which conferred an independent federal right of recovery on the Government.[2]

Whether the Medical Care Recovery Act created an independent federal right against workmen's compensation carriers was squarely addressed in *Pennsylvania National Ins. Co. v. Barnett,* 445 F.2d 573 (5th Cir. 1971). In *Pennsylvania National,* the Fifth Circuit held that the Medical Care Recovery Act applies only "in tort situations and does not apply where the source of the claim is workmen's compensation." 445 F.2d at 575. Relying on *Standard Oil, supra,* the Court declined to fashion a rule creating a federal right of recovery against a workmen's compensation carrier and held that legislative rather than judicial action was appropriate.

The *Pennsylvania National* Court, however, left open the question of whether the Government could obtain an assignment of a veteran's workmen's compensation claim and successfully maintain an action on that basis. *Id.* at 576. The Veterans Administration has promulgated a regulation, 38 C.F.R. § 17.48(d)[3] which, if valid, would enable

2. The Act provides, in pertinent part:

"In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured or suffers a disease, after the effective dates of this Act, *under circumstances creating a tort liability* upon some third person . . . to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim. (Emphasis added)

3. The regulation provides in pertinent part:

"§ 17.48. *Considerations applicable in determining eligibility for hospital or domiciliary care.*

* * * * *

"(d) Persons hospitalized . . . who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:

"(1)(i) Membership in a union, fraternal or other organization;

"(ii) rights under a group hospitalization plan, or under any of the prepay medical care or insurance contracts or plans which provide for payment or reimbursement in whole or in part, for the cost of medical or hospital care, and conditions the obligation of the insurer to pay upon payment or incurrence of liability by the person covered;

"(iii) 'Workmen's Compensation' or 'employer's liability' statutes, State or Federal;

* * * * *

will not be furnished hospital care, medical or surgical treatment, without charge therefor to the extent of the amount for which such parties, referred to in paragraph (d)(1) or (2) of this section, are, or will become liable. Such patients will be requested to execute an appropriate assignment as prescribed in this paragraph. Patients who, it is believed, may be entitled to care under any one of the plans in paragraph (d)(1) of this section will be requested to execute VA Form 10–2381, Power of Attorney and Agree-

the Government to procure an assignment of the veteran's workmen's compensation claim as a condition to his admission to a VA Hospital. The regulation presumably was intended to allow the Government to seek reimbursement on the basis of the assignment alone. The facts in *Pennsylvania National,* however, precluded the Court from considering the regulation, for the VA did not obtain an assignment from the veteran covered by workmen's compensation insurance. The Court held that it could not "impute to the framers of the regulation an intent that it be invoked in the absence of an assignment." *Id.* at 576.

Two district courts subsequently addressed the question of whether the Government could maintain an action against an employer or his workmen's compensation carrier on the basis of an assignment procured pursuant to 38 C.F.R. § 17.48(d). Both courts reached opposite conclusions, largely because of their disagreement on whether the VA had the authority to promulgate § 17.48(d).

In *United States v. Chicago White Metal Casting Co.,* Civ. No. 73 C 2424 (N.D.Ill., Jan. 16, 1974), the Government brought an action against a veteran's employer after obtaining from the veteran an assignment of his workmen's compensation claim. The Court first held that § 17.48(d) was valid, as it was based upon the authority of the Administrator of Veterans Affairs to make necessary rules and regulations, 38 U.S.C. § 210(c), and to prescribe rules, procedures, and limitations concerning hospital care, *id.* § 621. *Pennsylvania National, supra,* was also relied on by the Court as "indirect support" for this holding. The Court considered the Fifth Circuit's statement that "any right of the Veterans Administration to recover was conditioned upon the procurement of an assignment," 445 F.2d at 574, as an implicit holding that recovery would have been allowed had an assignment been procured.

The Court then concluded that the action could be maintained on the basis of an assignment alone, even though workmen's compensation claims were not assignable under state law. The Court reasoned that state law, to the extent it purported to prohibit the assignment, was invalid because of the supremacy clause.

In *Texas Employers Insurance Ass'n v. United States,* 390 F.Supp. 142 (N.D. Tex.1975), however, the Court held that § 17.48(d) was invalid to the extent that it created a right of recovery in the VA against a workmen's compensation insurance carrier. *Id.* at 148. The Court reasoned that to allow the VA to sue on the basis of an assignment would, in effect, permit an administrative agency to "create 'a new substantial legal liability' affecting 'the federal fiscal policy' " *Id.* Unlike the Court in *Chicago White Metal Casting, supra,* the *Texas Employers* Court concluded that the Fifth Circuit's statement in *Pennsylvania National* merely indicated that it did not consider whether § 17.48(d) gave the VA authority to prosecute a claim by virtue of an assignment. *Id.* at 148–49.

Finally, the Court rejected the Government's argument that the state statute prohibiting assignment of workmen's compensation claims was superseded by the supremacy clause. The Court reasoned that the anti-assignment provision was an integral part of the workmen's compensation contract, and that the "Workmen's Compensation Act is a package deal, and must be accepted as such by *any* litigant seeking to recover benefits under it." *Id.* at 150.

■ The first issue before the Court in the present case is whether § 17.48

ment. Those patients who, it is believed, may be entitled to hospital care under the circumstances prescribed in paragraph (2) of this paragraph will be requested to complete VA Form 2–4763, Power of Attorney and Assignment. Notice of this assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained, bill therefor will be mailed such party or parties.

(d), if valid, creates a right of recovery in the Government. An examination of the regulation shows that it defines the circumstances in which a veteran suffering from a non-service-connected disability will be furnished hospital, medical and surgical care at Government expense. The only reasonable construction that can be placed on § 17.48 is that it provides that veterans will *not* be treated free of charge in situations in which there is liability for such treatment in an employer or workmen's compensation carrier unless VA can enforce that liability by taking an assignment.[4] If VA cannot be reimbursed on the basis of an assignment, the veteran presumably must be billed for the cost of such care.[5]

Section 17.48(d) does not purport to allow VA to maintain an action against Kirkland and CRE to enforce a liability owed directly by them to VA, a liability independent of and in addition to their liability to Stewart under state law. If § 17.48(d) were intended to create an independent liability owed directly to VA, it would have been unnecessary to provide that an assignment be executed.[6] On the other hand, the assignment provision, if it is to have any meaning, must be construed as purporting to provide a means by which VA could succeed to Stewart's state right to free hospital and medical care for injuries arising out of and in the course of his employment.[7] In this respect, § 17.48(d) does purport to confer a right of recovery on VA. Any right of recovery VA has under this regulation, however, must be considered derivative of Stewart's right rather than independent of it.

The second issue, then, is whether § 17.48(d) is valid to the extent that it confers a right of recovery on VA. Kirkland and CRE contend that VA is without authority to create "a new and substantive legal liability" affecting "federal fiscal policy." They rely on *Standard Oil* for the proposition that only Congress can create such a liability.

The Court is of the opinion that § 17.48(d) does not create what the *Standard Oil* Court termed "a new and substantive legal liability,"[8] and, for this reason, it is unnecessary to decide whether VA has the authority to create such a right. Kirkland and CRE *were*

4. The regulation also provides that veterans will not be treated free of charge when liability for the cost of hospital and medical care exists in an insurer or a third party because of his relationship with or duty to a veteran.

5. It is conceivable that the veteran could then make a claim for this amount under state workmen's compensation law. This result would be unduly harsh, however, since Stewart was admitted to the VA hospital with the expectation that his execution of an assignment relieved him from the responsibility of paying for his care.

6. An assignment ordinarily extinguishes the right in the assignor and transfers it to the assignee. *Restatement of Contracts* § 149.

7. Several state courts, however, seem to have construed § 17.48(d) as allowing VA to maintain a direct action without reference to an assignment. *See Higley v. Schlessman*, 292 P.2d 411 (Okl.1956); *Stafford v. Pabco Products*, 53 N.J.Super. 300, 147 A.2d 286 (1958); *Brauer v. J. C. White Concrete Co.*, 253 Iowa 1304, 115 N.W.2d 202 (1962); *Marshall v. Rebert's Poultry Ranch & Egg Sales*, 268 N.C. 223, 150 S.E.2d 423 (1966).

8. The Court began its decision in *Standard Oil* with the following statement: "Not often, since the decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] is this Court asked to create a new substantive legal liability without legislative aid and as at the common law." 332 U.S. at 302, 67 S.Ct. at 1605. What the Court meant by "a new and substantive legal liability was clarified by the following statement: "The Government's claim, of course, is not one for subrogation. It is rather for an independent liability owing directly to itself as for deprivation of the soldier's services and 'indemnity' for losses caused in discharging its duty to care for him consequent upon the injuries inflicted by appellants. See, *Robert Marys' Case*, Vol. 5, Part 9 Co.Rep. at 113a. It is, in effect, for tortious interference by a third person with the relation between the Government and the soldier and consequent harm to the Government's interest, rights and obligations in that relation, not simply to subrogation to the soldier's rights against the tort-feasors." 332 U.S. at 304, n. 5, 67 S.Ct. at 1606.

*already liable,* as a matter of state law, for the cost of hospital and medical care furnished to Stewart for treatment of injuries covered by the Tennessee Workmen's Compensation law.[9] The assignment, if valid under State law, merely shifted from Stewart to VA the right to enforce that same liability.

There are other reasons why *Standard Oil* does not preclude VA from succeeding to Stewart's right by virtue of an assignment. In *Standard Oil,* the Court was asked to create a *"new* and substantive legal liability" that arguably would have subjected tortfeasors to double liability.[10] In the present case, there is no chance that Kirkland and CRE will be exposed to double liability. The assignment, if enforceable, operated to divest Stewart of any right he had to hold them liable for the cost of his hospital and medical care.

*Standard Oil* is distinguishable from the present case in another important respect. In *Standard Oil* the Court limited the power of federal courts to select state law to determine the rights of the Government in areas where Congress has not spoken. *See* 332 U.S. at 308–09, 67 S.Ct. 1604. There is no indication that this same limitation was intended to be placed on Federal administrative agencies whose regulations, if reasonable and authorized, have the same effect as an Act of Congress.

Since *Standard Oil* does not preclude VA from succeeding to Stewart's rights on the basis of an assignment, the next issue presented is whether VA is authorized by Congress to take and enforce the assignment. Congress has conferred on the Administrator of Veterans Affairs the broad statutory authority to promulgate regulations "necessary or appropriate to carry out the laws administered by the Veterans' Administration and are consistent therewith."[11] The Administrator is further authorized to prescribe "such rules and procedure governing the furnishing of hospital . . . care as he may deem proper and necessary."[12]

Congress, however, has enacted a statute limiting VA's authority to provide

9. T.C.A. § 50–1004 provides in pertinent part:

"For not exceeding three (3) years after notice of injury, the employer or his agent shall furnish free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as herein defined, as may be reasonably required . . . ."

10. The following statement indicates that the Court felt that if it were to create a new and substantive liability owed directly to the Government, the tortfeasor would be subjected to double liability.

"Furthermore, the liability sought is not essential or even relevant to protection of the state's citizens against tortious harms, nor indeed for the soldier's personal indemnity or security, except in the remotest sense,[14] since his personal rights against the wrongdoer may be fully protected without reference to any indemnity for the Government's loss."

* * * * *

"[Note] 14 That is, if potential added liability ever can be considered as having effect to deter the commission of negligent torts, the imposition of liability to indemnify the Government *in addition to indemnifying the soldier* conceivably could be thought to furnish some additional incentive for avoiding such harms." (Emphasis added) 332 U.S. at 310 & n. 14, 67 S.Ct. at 1609.

11. 38 U.S.C. § 210 provides in pertinent part:

Appointment and general authority of Administrator; Deputy Administrator

(a) The Administrator of Veterans' Affairs is the head of the Veterans' Administration. He is appointed by the President, by and with the advice and consent of the Senate.

* * * * *

(c)(1) The Administrator has authority to make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans' Administration and are consistent therewith, including regulations with respect to the nature and extent of proofs and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws, the forms of application by claimants under such laws, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards.

12. 38 U.S.C. § 621 provides in pertinent part:

Power to make rules and regulations. The Administrator shall prescribe—

(1) such rules and procedure governing the furnishing of hospital and domiciliary care as he may deem proper and necessary;

(2) limitations in connection with the furnishing of hospital and domiciliary care . . . .

free hospital and medical care to veterans suffering from non-service-connected disabilities to situations in which the veteran is unable to "defray the expense" of such care.[13] The Court is of the opinion that § 17.48(d) is "necessary or appropriate" to the administration of this statutory provision. If a third party is already bound to furnish hospital and medical care, it cannot be said that the veteran is unable to "defray the expense" of such care. The regulation, therefore, merely enables VA to charge the veteran for or seek reimbursement of the cost of hospital and medical care which VA is neither obligated or authorized to furnish free of charge.

The final issue before the Court is whether the provision of the Tennessee Workmen's Compensation Law, T.C.A. § 50–1016, which forbids the assignment of workmen's compensation claims, renders Stewart's assignment to VA invalid and unenforceable. No Tennessee courts have considered the application of the statute to a situation like the present. In *Gregg v. New Careyville Coal Co.*, 161 Tenn. 350, 31 S.W.2d 693 (1930), however, the Court stated that T.C.A. § 50–1016 "was intended to prevent diversion of the compensation to objects beyond the purposes of the act." In the present case, enforcement of the assignment would not confer benefit on a non-object. Hospitals that furnish care which an employer or his workmen's compensation carrier are required by law to provide necessarily must be considered objects of the Act to the extent of their reasonable expenditures on behalf of the employee.

Although the statute expressly provides that "no claim for compensation under this law shall be assignable", it must be construed in light of T.C.A. § 50–918, which provides as follows:

> "*Equitable construction to secure remedial purposes of law.*—The rule of common law requiring strict construction of statutes in derogation of common law shall not be applicable to the the provisions of the Workmen's Compensation Law, but the same is declared to be a remedial statute which shall be given an equitable construction by the courts to the end that the objects and purposes of this law may be realized and attained."

The Court is of the opinion that the only equitable construction that can be placed on T.C.A. § 50–1016 is that it does not forbid assignment under the unique facts of the present case.

For the foregoing reasons, it is ORDERED that the Government's motion for summary judgment on the issue of liability be, and the same hereby is, granted, and the defendants' motion for summary judgment be, and the same hereby is, denied. This case will be set for trial to determine the extent to which treatment provided Stewart at the VA hospital is covered by the Tennessee Workmen's Compensation Law, unless the parties stipulate the coverage.

Order Accordingly.

13. 38 U.S.C. § 610 provides in pertinent part:

Eligibility for hospital and domiciliary care.

(a) The Administrator, within the limits of Veterans' Administration facilities, may furnish hospital care which he determines is needed to—

(1) (A) any veteran for a service-connected disability; or

(B) a veteran of any war for a non-service-connected disability if he is unable to defray the expenses of necessary hospital care;